## A91A1868. MOORE v. THE STATE.
(414 SE2d 705)

BEASLEY, Judge.

Following the denial of his amended motion for new trial, Chad

Lee Moore appeals his conviction for burglary, OCGA § 16-7-1 (a), of a restaurant.

1. In enumerations of error one and three, Moore challenges the sufficiency of the evidence by contending that the trial court erred in denying him a new trial on the general grounds and by denying him a directed verdict of acquittal. The argument is that, as in *Williams v. State*, 126 Ga. App. 350 (190 SE2d 785) (1972), the State in this circumstantial evidence case failed to prove Moore's recent possession of the stolen goods, in that it did not eliminate the hypothesis of possession by a third party.

We consider these two enumerations to the extent they raise reviewable questions. See *Lewis v. State*, 186 Ga. App. 92 (1) (366 SE2d 305) (1988); *Towns v. State*, 185 Ga. App. 545 (365 SE2d 137) (1988); *Stinson v. State*, 185 Ga. App. 543 (364 SE2d 910) (1988).

While on the midnight shift, a sheriff's deputy received a radio call to go to a local restaurant to check on a report from a security guard at a business located behind the restaurant. The guard related that he had seen three or four men running from the restaurant carrying boxes and other items. The deputy arrived about one minute after receiving the call. As he approached the restaurant, the deputy did not see anyone in the road or at the building, but as he neared a trailer park down the road he spied Moore "stooped down" in a ditch, located about 30-40 yards from the back of the restaurant. Moore was wearing brown gloves and appeared to be either holding something or placing something down which could have been black in color. He then crouched down and "started acting like he was tying his shoe." As the deputy drove towards him, Moore stood up and walked towards the deputy. They met about ten feet from where Moore had been crouched. Ten seconds elapsed from the time the deputy first saw Moore until Moore approached the car.

The deputy talked to Moore, patted him down, put him in the patrol car, and took him to the witness' location at the nearby flea market for a possible showup identification. The witness was unable to positively identify Moore as he could not discern any characteristics other than the gender of the fleeing individuals. The deputy headed back to the restaurant, during which time he obtained more identification information from Moore. He was able to keep the restaurant in sight.

He released Moore nearby at a spot where he could view Moore and continue on to the restaurant. Moore stood there, smoked a cigarette, and walked ten or fifteen yards towards the nearby trailer park at which Moore said he resided. The deputy went to the spot where he first saw Moore and found the VCR taken from the restaurant. There was no other object on the ground in that area. The deputy returned to Moore and placed him in the back of the patrol car.

The deputy and another officer found a window had been broken out of the restaurant, which had been ransacked. The restaurant's owner itemized as missing the VCR, cash, two cases of beer from a cooler, and two packages of cigarettes. Scratch marks were found on the safe, as if someone had attempted to pry it open.

About two years before this incident, Moore had worked for about two-and-one-half months in the restaurant's kitchen. He was familiar with the building and had access to areas including the coolers and the office containing the safe. During Moore's employment, the owner had witnessed Moore buying and smoking the two brands of cigarettes missing after the burglary.

Moore had not been fired but, along with his brother, a co-employee, failed to report for work the morning after a burglary at the restaurant. The men's bicycle was discovered still at the restaurant. The owner had suspected Moore as the perpetrator of this earlier burglary, in which was taken cash and the same brands of cigarettes and beer as were stolen in the present burglary and as were known to be used by Moore.

There were more fingers pointing at Moore than the suspicious behavior and close proximity to the crime scene and stolen goods in the *Williams* case. In addition, Moore's familiarity with the non-public areas of the burglarized restaurant, especially the locations of the safe and the other stolen goods, plus his personal preference for precisely the brands of goods stolen, inferred his involvement. Another finger was the short time, considering the circumstances, from the time of the burglary to when Moore was seen with a dark object and the discovery in the same spot of a stolen VCR, a dark object. The evidence, albeit largely circumstantial, was sufficient to exclude any *reasonable* hypothesis save guilt. Consequently, the jury was authorized to find Moore guilty of the charged burglary beyond a reasonable doubt, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and Moore was not entitled to a directed verdict or a new trial by virtue of the general grounds.

2. Enumeration of error two contends that the court erred in allowing into evidence convictions for burglaries occurring two-and-one-third years earlier and four years earlier, in violation of OCGA § 24-2-2 (see also OCGA § 24-9-20) and the USCR. His challenge is that there was insufficient notice of the State's intention to present the evidence as well as insufficient proof, in substance and presentation, that he perpetrated the other crimes. He admits the similarity of the prior transactions to the one on trial.

The State introduced certified copies of prior indictments, guilty pleas, and sentences at the conclusion of its case-in-chief. Compare *Gilstrap v. State*, 261 Ga. 798 (410 SE2d 423) (1991). As to the 1985 crime, Moore objected only to those documents being read to the jury,

on the ground that it would physically have them during deliberations.

The trial court deemed the documents relating to the earlier crime to be admitted without objection. This is supported by *Hunter v. State*, 202 Ga. App. 195 (3) (413 SE2d 526) (1991), discussing waiver of evidentiary objections to introduction of similar transactions. See also *Glisson v. State*, 165 Ga. App. 342, 343 (5) (301 SE2d 62) (1983), for the general principle of the necessity of objecting to evidence at the time it is offered. Assuming that Moore's earlier protests to admission in toto of the prior transaction evidence sufficiently preserved his present objections to both earlier crimes, Moore's complaints do not prevail.

(a) Notice. The State filed its notice to present evidence of the two transactions in open court just prior to the start of trial, stating that it had shown the documents to counsel seven days earlier. Although USCR 31.1 provides that such notice is to be filed at least ten days before trial, it also expressly authorizes the trial court to shorten or lengthen the time period in its discretion. By allowing the notice on the day of trial and proceeding, the court in effect shortened the rule period. We cannot say this was error as a matter of law. Nor, as urged by Moore, do the rules require that an alteration of the time frame be by written order. *Durham v. State*, 181 Ga. App. 155, 156 (2) (351 SE2d 683) (1986), does not *require* a formal order.

(b) Perpetrator Identity. The documentary evidence admitted and provided to the jury all bore the name "Chad Lee Moore." "The concordance of name alone in the absence of proof to the contrary, i.e., that [Moore] was not the perpetrator of the prior offenses, was some evidence of [Moore's] identity as the perpetrator of the independent crimes. [Cit.]" *Banks v. State*, 201 Ga. App. 266, 269 (1) (410 SE2d 818) (1991), and the cases cited therein. Moreover, the signatures on the guilty pleas and Moore's signature on the present indictment are similar.

Moore concedes similarity of crime, which is another condition of admissibility, *Chastain v. State*, 260 Ga. 789, 790 (3) (400 SE2d 329) (1991), so analysis in this regard is not required. It is noted, however, that this case differs from *Stephens v. State*, 261 Ga. 467 (405 SE2d 483) (1991). Unlike *Stephens*, the admitted certified copies of indictments, guilty pleas, and sentences contained sufficient information from which the jury could assess any similarity to the crime on trial. The documents showed that the prior acts were burglaries, were committed in the same county as the crime on trial, were close in time to it (discounting periods of incarceration), and were likewise committed on commercial property. See *Banks*, supra at Division 1.

3. Enumeration of error five challenges the failure of the trial court to charge the jury that the prior convictions were admitted for a

limited purpose and to describe that purpose.

The record contains no written requests to charge. Following discussion between the court and counsel, out of the presence of the jury, regarding the admissibility of the prior crimes and the court's indication it would admit the evidence for specified limited purposes, defense counsel sought assurance that the court would instruct the jury regarding the evidentiary limitations. The court stated that "of course" it would do so. When the evidence was admitted, no limiting instruction was given. The court's concluding charge to the jury did not mention the evidentiary purpose of the prior convictions either. Defense counsel made a general reservation of exceptions to the charge.

"It is well recognized that when evidence is admitted for one purpose, . . . it is not error for the court to fail to instruct the jury to limit its consideration to the one purpose for which it is admissible, *in the absence of a request to so instruct the jury.* [Cits.]" *Harrell v. State,* 241 Ga. 181, 186 (2) (243 SE2d 890) (1978). It must be a "proper written" request. *Daniels v. State,* 184 Ga. App. 689, 690 (1) (362 SE2d 775) (1987). OCGA § 5-5-24 (b). See also *Young v. State,* 149 Ga. App. 533, 536 (7) (254 SE2d 749) (1979); *Jackson v. State,* 204 Ga. 47, 56 (3) (48 SE2d 864) (1948). The situation at bar falls outside the general rule.

First, Moore had no opportunity to submit a written request because he had no notice until the morning of trial, apparently after he arrived at court, that the State intended to introduce this generally inadmissible evidence. The State did not give that notice ten days in advance, as USCR 31.1 provides. The purpose of advance notice is to allow Moore to prepare for it, and this includes the fashioning of appropriate requests to charge. Obviously OCGA § 5-5-24 (b) does not contemplate the rejection of oral requests which are prompted by a legitimately unexpected trial development. The statute intends the court, as well as the parties, to have sufficient time to consider the jury charge so that it will be legally correct. But in this instance the court shortened to nearly zero the time for the Rule-required notice, relinquishing the accommodation which the statute affords. Moreover, the court expressly accepted the oral request, unequivocally assuring Moore that a limiting instruction would be given.

Second, "[w]hen evidence admitted for one purpose is potentially unfairly prejudicial to a party, that party is entitled to have the court instruct the jury to limit its consideration to the one purpose for which the evidence is admissible. [Cits.]" *Davis v. State,* 260 Ga. 338, 339 (393 SE2d 260) (1990). See also *Terry v. State,* 259 Ga. 165, 169 (1) (377 SE2d 837) (1989); *Davis v. State,* 202 Ga. 13, 21 (3) (41 SE2d 414) (1947); *Walker v. State,* 176 Ga. App. 783, 784 (338 SE2d 36) (1985). As in *Davis,* "the probative value of [the two prior burglary

convictions] is potentially outweighed by the danger of unfair prejudice to [Moore] — in the absence of a limiting instruction." *Davis*, supra 260 Ga. 339.

Third, the Supreme Court has recently reaffirmed the importance of establishment of the circumscribed purpose for which the independent transaction evidence is to be introduced.

As a threshold requirement for admissibility, the State must affirmatively show that it seeks to introduce the independent offense or act for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility rather than to raise an improper inference as to the accused's character. It must be relevant to an issue in the case. After a USCR 31.3 (B) hearing and before any introduction of the independent transaction evidence, the trial court must make the determination that the State has satisfactorily made each of the three showings as to each independent act or offense, i.e., permissible purpose and relevancy, perpetrator identity, and similarity of act. *Williams v. State*, 261 Ga. 640, 641 (2) (409 SE2d 649) (1991).

The State argued, in a foreshortened Rule 31.3 (B) hearing, that it was "permitted to introduce evidence of prior convictions to show intent, bent of mind, identity, course of conduct." The trial court ruled the documentary evidence of the convictions admissible "to show motive, modus operandi, bent of mind, scheme and other good indications that the man has the tendencies. . . ."

Even if this fairly comprehensive list were a sufficiently limiting purpose for the evidence, it was not shared with the jury. The jury was not prevented in any manner from considering the independent burglaries as substantive and direct evidence of Moore's guilt of the burglary on trial.

The possibility of undue prejudice to Moore, which is raised by what the trial court failed to tell the jury, is exacerbated by what it did instruct. As part of its general charge on the nature and role of evidence, the court stated: "Direct evidence is the testimony given by a witness who has seen or heard the facts to which he testifies. It also includes exhibits admitted into evidence during the trial. It is evidence which points immediately to the question at issue."

Such instruction is a correct statement of the general law, and a charge on direct evidence was warranted. But the only exhibits admitted into evidence were the documents evidencing Moore's prior convictions. Thus, the absence of any limiting instruction left the jury with the express charge that, as direct evidence, the convictions "[point] immediately to the question at issue," i.e., Moore's guilt of the crime charged.

The absence of an appropriate charge was "a substantial error . . . which was harmful as a matter of law," just as the presence of a

substantial error in the charge which is similarly harmful is considered by the law to be so significant that it is reviewed even in the absence of objection. OCGA § 5-5-24 (c).

These circumstances require that Moore's conviction be reversed and that he be granted a new trial.

4. Enumeration of error four complains of the court's direct evidence charge in light of the failure to give the limiting charge. This has been addressed and resolved in Division 3, supra.

*Judgment reversed. Carley, P. J., and Judge Arnold Shulman concur.*

DECIDED JANUARY 13, 1992.

*O. L. Collins*, for appellant.
*Michael C. Eubanks, District Attorney*, for appellee.