## A92A2227. GILBERT v. THE STATE.
### (430 SE2d 391)

Andrews, Judge.

Gilbert was tried and convicted of possession of cocaine with intent to distribute and obstruction of a police officer.

Evidence at trial was that on November 2, 1989, Officer Bryant, a member of the Blakely Police Department observed a drug transaction in an area in which drug activity is common. After observing the transaction, Bryant and another police officer hid on the roof of a building in order to continue observing the activity in the area. Bryant observed Gilbert drive up to a business in a truck and talk to a man who was standing outside of the business. Gilbert got out of the truck and went behind a green city trash can, which was located behind the business. Gilbert reached into a brown paper bag, which was on the ground behind the trash can. Gilbert then walked back to the man, the man handed Gilbert money and Gilbert handed the man rock cocaine and got back in his vehicle. Bryant heard the unidentified man comment that the substance was small. Bryant then saw another vehicle pull up to the area. A second man approached Gilbert and Gilbert again got out of the truck, walked over to the trash can again, picked up the brown paper bag, sorted some rocks of cocaine in his hand, walked back to the second man and gave the substance to him. Gilbert then got back in the truck. Bryant stated that Gilbert was one of three men in the truck. The other two men in the vehicle were Jeff Robinson, the owner of the business and John Lester, who was driving.

Another officer, Officer Middleton, also testified at trial. He stated that he came to the area when called by Bryant. Middleton went behind the trash can, looked in the paper bag which Gilbert had been going to, and determined that the substance in the bag appeared to be cocaine. Middleton then walked up to Gilbert and informed him that he was under arrest for possession of crack cocaine. Upon hearing this, Gilbert turned and attempted to flee.

Officer Suggs of the Early County Sheriff's Department testified

that he was involved in the arrest and search of Gilbert and that the search revealed that Gilbert was carrying a "big roll of money." By the time Gilbert arrived at the police station, he no longer had the money on his person. Another arrestee who had ridden in the back of the police car with Gilbert had $365 hidden in her undergarments at the station. She testified at trial that Gilbert gave it to her in the back of the police car and asked her to take it to his mother.

At trial, Gilbert testified that he and his friends regularly sat in the truck and socialized; he denied that he had gotten out of the truck during the evening of November 2 or that he had sold drugs. One of the men with him in the truck, Robinson, corroborated Gilbert's denial that he had gotten out of the truck.

Testimony regarding the prior conviction was from a Dougherty County sheriff who testified that on March 28, 1988, he had arrested Gilbert in a parking lot after observing Gilbert's vehicle for approximately two hours that day. According to the sheriff, on that date, 114.8 grams of rock cocaine were discovered in his vehicle, taped by duct tape under the vehicle. Represented by the same attorney who defended him at the trial on the instant charges, Gilbert pled guilty to the ensuing charge of trafficking in cocaine on May 15, 1989 and was banished from Dougherty County and sentenced to 30 years of probation.

1. In his first enumeration of error, Gilbert claims that the life sentence which was imposed on him for possession of cocaine with intent to distribute was excessive. He argues that because his prior conviction was for *trafficking* in cocaine under OCGA § 16-13-31, rather than a conviction under OCGA § 16-13-30 (b), the instant conviction was not his second conviction under OCGA § 16-13-30 and therefore the life sentence under OCGA § 16-13-30 (d) was void. Gilbert raised this issue in his motion for new trial, and we do not view his failure to raise the issue at the time of sentencing as barring his argument here. See *Taylor v. State*, 186 Ga. App. 113 (366 SE2d 422) (1988).

Prior to trial, the State gave notice to Gilbert that it would introduce a prior conviction for trafficking in cocaine under OCGA § 16-13-31. At the motion for new trial hearing, Gilbert's trial attorney testified that he was aware that the prior conviction would be used by the State in an effort to impose a life sentence. The record contains the notice which the State sent Gilbert alerting him that the offense of trafficking in cocaine would be used in aggravation of sentence. The prior conviction arose out of Gilbert's actions on March 28, 1988 and a certified copy of Gilbert's plea of guilty on May 15, 1989 to this trafficking charge based on 114.8 grams of cocaine in his possession was introduced at trial. The acts underlying the instant case occurred on November 2, 1989.

OCGA § 16-13-30 (d) states: "Except as otherwise provided, any person who violates subsection (b) of this Code section with respect to a controlled substance in Schedule I or a narcotic drug in Schedule II shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not less than five years nor more than 30 years. Upon conviction of a second or subsequent offense, he shall be imprisoned for life." Subsection (b) provides that "[e]xcept as authorized by this article, it is unlawful for any person to manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance."

The question presented here is whether a conviction for trafficking in cocaine under OCGA § 16-13-31 constitutes a second violation of OCGA § 16-13-30 (b) for purposes of OCGA § 16-13-30 (d). Gilbert cites *Taylor v. State*, supra, in support of his narrow interpretation of OCGA § 16-13-30 (b). In *Taylor*, this court held that the appellant's two prior drug convictions under Florida law did not constitute violations of OCGA § 16-13-30 (b), and that therefore it was error to sentence appellant to life imprisonment.

Gilbert also contends that *Smith v. State*, 193 Ga. App. 365 (387 SE2d 648) (1989), supports his interpretation of OCGA § 16-13-30 (d). In *Smith*, this court determined that appellant's 1971 conviction for selling heroin did not constitute an offense under OCGA § 16-13-30 (b) since the Georgia Controlled Substances Act was not in effect at that time. Accordingly, the *Smith* court determined that the life sentence imposed under OCGA § 16-13-30 (d) was improper.

Despite *Taylor* and *Smith*, we find that the sentence here was appropriate. To conclude that Gilbert's prior conviction under OCGA § 16-13-31 does not trigger the recidivist provisions of OCGA § 16-13-30 (d) would lead to an illogical result since Gilbert's first conviction was for a more serious version of the offenses outlined in OCGA § 16-13-30 (b). It appears that OCGA § 16-13-30 (b) was a lesser included offense of Gilbert's conviction under OCGA § 16-13-31. In *Bassett v. Lemacks*, 258 Ga. 367, 370 (370 SE2d 146) (1988), the Georgia Supreme Court distinguished the provisions of OCGA § 16-13-30 (b) from those of OCGA § 16-13-31. "OCGA § 16-13-30 (b) prohibits the manufacture, delivery, distribution, dispensing, administering, selling, or possession with intent to distribute any amount of a controlled substance and provides a greater penalty than (a). *OCGA § 16-13-31 aims at a yet more serious offense and calls it 'trafficking.' The penalties are still greater*. There are a number of ways the legislature might have defined trafficking. The definition might have been given in terms of dealing in a large number of drug transactions. Perhaps the amount of money involved could have been the test. Instead, the amount of controlled substance was chosen as the basis for distinguishing the crime of trafficking from the somewhat less serious

crimes. Twenty-eight grams was chosen as the dividing line." (Emphasis supplied.)

Gilbert's argument that the fact that OCGA § 16-13-30 (b) addresses possession with intent to distribute, while § 16-13-31 addresses only possession of the substance is misplaced. The "intent to distribute" which is necessary to the crime of possession of a substance under § 16-13-30 (b) is satisfied by the reasonable inference that a person who possesses more than the 28 grams of cocaine under § 16-13-31 intends to distribute it. See generally *Holbrook v. State*, 177 Ga. App. 318 (2) (339 SE2d 346) (1985).

Citing *Knight v. State*, 243 Ga. 770 (257 SE2d 182) (1979), Gilbert argues that if a statute increasing a penalty is capable of two constructions, it should be construed so as to operate in favor of life and liberty. Therefore, he argues, that he should not have been sentenced under OCGA § 16-13-30 (d). Although we are mindful of this rule, we are also aware that statutes must be construed so as to make sense. Here, it is nonsensical to conclude that a prior conviction for selling a *smaller* quantity of cocaine would constitute a prior offense under OCGA § 16-13-30 (d), but that the sale of a *greater* amount of the drug would not trigger the provisions of that statute. Certainly, the legislature did not intend such an illogical result and we will not so interpret the statute.

"The cardinal rule of construction of statutes is to carry into effect the legislative intent and purpose of the Act, if ascertainable, and it is within constitutional limits. Generally, where the language used by the legislature is plain and unambiguous, judicial construction is unnecessary. But where, as here, the words of the statute are inherently ambiguous, our task it to look diligently for the intent of the General Assembly.

"We find that the legislative intent behind OCGA § 16-13-30 (d) and the purpose for its enactment is to deter repeat offenders of certain drug crimes enumerated in OCGA § 16-13-30 (b) and to segregate persons who have two convictions of such offenses from the rest of society for an extended period of time. The language employed by the General Assembly to effect this purpose is at best unclear. However, while we agree that any criminal law should be plain and unambiguous and not dependent upon the current conflicting views of appellate judges, it is also true that the legislative intent will prevail over the literal import of the words. Furthermore, it is the duty of the court to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature. The construction must square with common sense and sound reasoning." (Citations and punctuation omitted.) *Mays v. State*, 200 Ga. App. 457, 459 (2) (408 SE2d 714) (1991), rev'd 262 Ga. 90 (1) (414 SE2d 481)

(1992).

To accept Gilbert's contention that his more serious conviction under OCGA § 16-13-31, for a crime which is different only in that it is more serious than those listed in OCGA § 16-13-30 (b), does not constitute a prior conviction so as to trigger the life sentence provisions of OCGA § 16-13-30 (d) is to ignore the intent of the legislature. Clearly, the legislature did not intend that violators of OCGA § 16-13-31 be exempt from the severe punishment of OCGA § 16-13-30 (d). Given our conclusion that Gilbert's prior conviction constituted a violation of OCGA § 16-13-30 (b), we find that the life sentence was properly imposed.[1]

2. In his second enumeration, Gilbert claims that the trial court erred in failing to hold a presentence hearing. OCGA § 17-10-2 (a) provides that except in a capital case, "upon the return of a verdict of 'guilty' by the jury in any felony case, the judge shall dismiss the jury and shall conduct a presentence hearing at which the only issue shall be the determination of punishment to be imposed."

Gilbert does not argue that he was not notified that the prior conviction would be used in sentencing or that he was unaware of the sentence sought. In fact, it is not clear how Gilbert contends the presentence hearing was deficient. In light of the facts of this case and the fact that a life sentence under OCGA § 16-13-30 (d) is mandatory, see *Rucks v. State*, 201 Ga. App. 142 (410 SE2d 206) (1991), we find no error in the procedure below.

3. Gilbert's third enumeration of error is that the trial court erred in allowing into evidence a copy of his prior guilty plea to trafficking in cocaine and testimony regarding the prior case. Gilbert supports this enumeration by arguing that the State failed to comply with USCR 31.1 and 31.3 by failing to file with the court notice of these prior convictions and that the court held no hearing regarding this evidence.

First, there is a conflict in the record regarding whether such a hearing was held. The trial court indicated that it *did* hold a hearing, off the record, regarding the prior conviction in which the court determined that the prior conviction was admissible. At the hearing on the motion for new trial, Gilbert's trial attorney stated that no such hear-

---

[1] Gilbert does not contend that he was unaware that he would be sentenced under this statute. He admits that he received notice that his prior conviction would be introduced in aggravation of punishment. See OCGA § 17-10-2 (a). Because Gilbert does not raise this argument, this case is distinguishable from *State v. Freeman*, 198 Ga. App. 553 (402 SE2d 529) (1991). See also *State v. Marshall*, 195 Ga. App. 535 (394 SE2d 379) (1990); *State v. Hendrixson*, 251 Ga. 853 (310 SE2d 526) (1984); *Anderson v. State*, 176 Ga. App. 255 (335 SE2d 487) (1985). In fact, at the motion for new trial hearing, Gilbert's attorney testified that his understanding throughout the proceedings was that a conviction would result in a life sentence.

ing regarding the similar transactions was held. Following the presumption that the trial court ruled correctly, we conclude that a hearing was held. (We also note that if Gilbert was correct, and if no hearing was held, then he is estopped from raising this argument, since he made no objection to the evidence of prior act when it was introduced.) Thus, Gilbert's argument that no hearing was held is without merit.

In addition to arguing that the court failed to conduct the proper hearing regarding the prior conviction, Gilbert also challenges the sufficiency of the trial court's determination on the record that the State made a proper showing at the pre-trial hearing for admission of similar transaction evidence under *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991), and *Maxwell v. State*, 262 Ga. 73 (414 SE2d 470) (1992). The case here was tried in March 1990 and decided in September 1991. To the extent that the court was required to apply the procedural requirements retroactively, see *Ramirez v. State*, 205 Ga. App. 217 (422 SE2d 3) (1992), it is apparent that the required findings for introduction of similar crimes were not made a part of the record by the trial court here. Compare *Hunter v. State*, 204 Ga. App. 25 (418 SE2d 402) (1992). Assuming that this issue was preserved for review, the evidence of Gilbert's guilt was overwhelming and thus the trial court's failure was, at most, harmless. See *Wright v. State*, 253 Ga. 1, 4 (3) (316 SE2d 445) (1984); compare *Burney v. State*, 201 Ga. App. 64, 65 (410 SE2d 172) (1991); *Lumpkin v. State*, 205 Ga. App. 68 (421 SE2d 100) (1992). Accordingly, we find no error.

Finally, although Gilbert concedes that he had notice that the prior conviction would be introduced as similar transaction evidence, he argues that the filing requirement under the Superior Court Rules was not met. First, we note that this argument was not appropriately raised before the trial court. Moreover, the record contains the "notice of intent to introduce prior crimes," which the State sent Gilbert and we find no harmful error in light of the fact that Gilbert was served with this notice.

4. In his fourth enumeration of error, Gilbert claims that the trial court erred in denying his motion for a new trial in that he received ineffective assistance of counsel. A trial court's finding that a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous. *Warren v. State*, 197 Ga. App. 23 (1) (397 SE2d 484) (1990). Here, Gilbert must overcome the strong presumption that defense counsel's conduct falls within the broad range of reasonable professional conduct. *Snyder v. State*, 201 Ga. App. 66 (8) (410 SE2d 173) (1991). "To establish ineffective assistance of counsel, [a defendant] must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. [Cits.]" The test is whether there is a reasonable probability

the jury would have reached a different verdict, absent the error of counsel. *Gross v. State*, 262 Ga. 232, 233-234 (1) (416 SE2d 284) (1992). Here Gilbert has not established that he was denied reasonably effective assistance of counsel.

(a) Gilbert claims that his counsel was ineffective in failing to meet with him, not going over the jury list, not requesting a pretrial hearing on the admissibility of the prior conviction and not filing a motion for change of venue. To the extent that these allegations are factually accurate (see Division 3), we do not find counsel's performance in these particulars deficient. Further, even if the waiver fell below the standard of effective representation, such deficiency would not have been reasonably likely to have produced a different outcome in the trial. See *Gross*, supra.

(b) Gilbert argues that trial counsel was ineffective in that he failed to object to Gilbert receiving a life sentence and he admitted that he had made a mistake by failing to do so. Because of our conclusion in Division 1, we find this argument without merit. Counsel's performance in this regard was not deficient for the reasons set forth above.

(c) Gilbert claims that trial counsel erred by waiving his objections based on *Batson* after the trial court stated the State had given a sufficient, racially neutral reason. We do not find this aspect of counsel's performance deficient and this argument is without merit.

(d) Gilbert argues that trial counsel was ineffective in that he stipulated that the crime lab witness was an expert and then he "bolstered the witness." We have reviewed the record in this regard and find no merit in these claims.

(e) In three separate arguments, Gilbert argues that the trial court erred in failing to hold that his counsel was ineffective in that he failed to object to the introduction of the prior indictment and plea and failed to object to witnesses testifying about the prior indictment and plea. Further, Gilbert claims that his counsel's reference to the fact that his punishment for the prior conviction was probation constituted ineffective assistance. Given our conclusion in Division 3 above, we find no error in counsel's performance in this regard.

(f) Gilbert claims that the trial court erred in failing to find his counsel ineffective in that he failed to object to certain hearsay questions and leading questions. We do not find this performance deficient, further, even if this performance fell below the standard of effective representation, such deficiency would not have been reasonably likely to have produced a different outcome in the trial. See *Gross*, supra.

(g) Gilbert claims that trial counsel failed to request time to prepare to present evidence in "mitigation of evidence." This argument is ambiguous, given Gilbert's argument that no presentencing hearing

was held. To the extent that we understand his argument, we do not find trial counsel's performance deficient. Further, even if this performance fell below the standard of effective representation, such deficiency would not reasonably be likely to have produced a different outcome in the trial. See *Gross*, supra. We have reviewed appellant's remaining arguments regarding ineffective assistance and find them without merit. See *Gross*, supra; see also *Brown v. State*, 257 Ga. 277 (2) (357 SE2d 590) (1987).

5. Finally, Gilbert argues that the trial court erred in denying his motion for new trial on the grounds that the trial judge threatened defense witnesses, commented on the evidence and interfered with the defense. After a review of the transcript, we find that the trial court's behavior was appropriate. "The trial judge has broad discretion in handling these matters and we are loath to interfere with that discretion unless it is manifestly abused by clearly demonstrated prejudice or unfairness." *Dyke v. State*, 232 Ga. 817, 825 (3) (209 SE2d 166) (1974). We find no abuse of that discretion and appellant's final enumeration is without merit.

*Judgment affirmed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED MARCH 17, 1993 —
RECONSIDERATION DENIED MARCH 30, 1993

*Ronnie J. Lane*, for appellant.
*Charles M. Ferguson, District Attorney*, for appellee.