A93A2169. PETERSON v. THE STATE.
(441 SE2d 481)

ANDREWS, Judge.

Peterson was charged with trafficking in cocaine and possession with intent to distribute and found guilty of both. The trial court merged the offenses and sentenced Peterson to life imprisonment. He appeals.

Evidence at trial was that on April 10, 1992, at about 5:30 p.m., DeKalb County Police Officer Terrell Toles was doing an inventory of a car, which belonged to James Smith, a suspected cocaine trafficker. While Officer Toles was surveying the vehicle's contents, the car phone rang. Toles answered it and told the caller that Smith was not available and that he should call back. Within 20 seconds, the same

caller phoned again. The caller stated that Smith was "supposed to be getting me a quarter." Toles, who understood that the caller was using terms for cocaine, asked whether the caller meant a quarter ounce or a quarter kilo. The caller stated "a quarter key." Toles informed the caller that he was working on that for Smith. Toles asked the caller how much Smith charged him for the drugs and the caller told him "55," which Toles interpreted to mean $5,500. Toles told the caller that because he was angry at Smith, he would sell the drugs to him for $5,000.

The caller stated he would come to Atlanta from South Carolina that night for the purchase. Toles gave the caller his pager number and told him to enter a "99," afterwards to identify himself. No other person had been given this code identification. During the second conversation the caller identified himself as "Al."

About 10:30 that same night, Toles' pager went off with the identifying code "99" behind it. Toles called the number back and spoke with the voice identified as "Al." The two arranged a meeting place at a grocery store and Al stated that he would have a woman companion with him.

Officer Toles went to the meeting place in a blue Jeep Cherokee and met "Al" in a white Impulse automobile with South Carolina plates. Several officers gathered nearby to assist in arresting Peterson when the "take-down" signal was given.

Toles got out of his car and the man in the Impulse, whom Toles identified as Peterson, exited his vehicle. Toles testified that he recognized Peterson's voice as the same person that he had spoken with three times earlier that day.

Toles accompanied Peterson to his vehicle to get his money. Peterson handed Toles a bag of money and the two men talked about the cocaine business. Peterson told Toles he had no problem selling the drug in South Carolina. Toles returned to the Jeep to get the cocaine and alert the other officers.

Toles then returned to Peterson's vehicle. As the other officers moved in to arrest Peterson, he began running away, with the cocaine clutched in his hand. He was arrested and the cocaine was seized from him. The money in the bag totaled $5,075 — which was comprised of three $100 bills, four $50 bills, 219 $20 bills, sixteen $10 bills, and seven $5 bills.

Officers Powers and Cox of the Greenwood, South Carolina, Police Department also testified regarding evidence of a similar transaction in which Peterson was involved. The prior transaction involved Peterson selling an eighth of an ounce of cocaine to undercover officer Powers in January 1989 in South Carolina. The transaction was arranged in a parking lot between Powers, a confidential informant, and Peterson the day before the arrest. Peterson was charged with posses-

sion of the drug with intent to distribute and he pled guilty in November 1989.

Peterson also testified at trial. He claimed that his 1989 conviction was the result of being set up. He denied that he made phone calls to Officer Toles prior to his arrest in April 1992. He said that he came to DeKalb County to buy a Jeep and that the money he had with him at the time of the arrest was for purchasing the vehicle. He stated a friend named "Alfred Childs" gave him Toles' number to call for the Jeep.

1. In his first enumeration of error Peterson claims that the trial court erred in imposing a life sentence pursuant to OCGA § 16-13-30 (d). The State concedes that the imposition of the life sentence was erroneous.

Although Peterson did not raise the arguments raised here at the original imposition of the life sentence, he raised the issue by an amended motion for new trial. Subsequently, he also filed a motion to vacate the life sentence, which the trial court granted. Thereafter the trial court reinstated the life sentence. Given these facts, we find that the issue was preserved for our consideration. See generally *Taylor v. State*, 186 Ga. App. 113 (366 SE2d 422) (1988).

We conclude that the imposition of the life sentence was erroneous and remand the case for resentencing. Unlike *Gilbert v. State*, 208 Ga. App. 258 (430 SE2d 391) (1993), in this case Peterson's prior conviction on which the life sentence was based was a conviction from South Carolina. This court determined in *Taylor*, supra, that it was error to impose a life imprisonment under OCGA § 16-13-30 (d) for a prior drug conviction under Florida law, since that did not constitute a violation of the *Georgia* Controlled Substances Act. Similarly, in this case, we must conclude that Peterson's prior conviction under South Carolina law did not invoke the provisions of OCGA § 16-13-30 (d), and thus we remand the case for resentencing.

2. In his second enumeration, Peterson contends that the trial court erred in admitting evidence of an allegedly similar transaction and in not redacting prejudicial handwritten notations from the face of that indictment. There is no indication that Peterson objected to the similar transaction evidence at trial. Although the court stated: "I note your objection for the record," there was no objection made and this argument is waived. Furthermore, there is no indication that Peterson requested that any material be redacted from the similar transaction evidence and this argument is also waived.

3. Next, Peterson claims that the trial court erred in charging the jury that it could consider his 1989 South Carolina conviction for the purpose of impeachment. When the evidence was initially introduced, the court instructed the jury that the evidence could be considered only as to the identity of the accused, the state of mind, any alleged

common scheme, plan, course of conduct or motive as pertained to the charges for which Peterson was being tried. The court repeated this instruction at the conclusion of the trial.

Before repeating the charge regarding similar transactions, the court instructed the jury regarding impeachment of witnesses. The court charged that a witness could be impeached by proof that the witness had been convicted of a crime of moral turpitude. The court then stated: "the State has introduced a certified copy of a plea and indictment for the offense of violating the Georgia Controlled Substances Act. [The court was apparently referring to the South Carolina conviction.] That is a felony and I charge you that in the state of Georgia all felonies are crimes involving moral turpitude."

Peterson argues that to so charge on impeachment by proof of conviction was reversible error since he had not placed his character in issue.

Our first consideration is Peterson's failure to object to the giving of this charge. Although he concedes that he did not object, he argues that the charge was sufficiently egregious under OCGA § 5-5-24 (c) to warrant reversal. Under that statute, regardless of whether an objection was made, "the appellate courts shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law."

Although Peterson testified at trial in his own behalf, he did not put his character in issue. See generally OCGA § 24-9-20 (b); *Howard v. State*, 202 Ga. App. 574 (415 SE2d 45) (1992); *Lindler v. State*, 149 Ga. App. 155 (253 SE2d 833) (1979). Consequently, the prior conviction could not be considered by the jury for purposes of impeaching Peterson's testimony. OCGA § 24-9-82; *Howard*, supra.

"We cannot, however, agree with the appellant that the error requires reversal. In view of the overwhelming evidence of the appellant's guilt, and notwithstanding the conflicting instructions of the court, we find it highly probable that the error did not contribute to the judgment." (Citations and punctuation omitted.) *Howard*, supra at 576. Compare *Moore v. State*, 202 Ga. App. 476 (3) (414 SE2d 705) (1992); *Barnett v. State*, 178 Ga. App. 685 (1) (344 SE2d 665) (1986); *Davis v. State*, 260 Ga. 338 (393 SE2d 260) (1990) (no limiting instructions given upon request).

4. In his fourth enumeration, Peterson argues that he was denied the right to effective assistance of counsel. Citing *Cochran v. State*, 262 Ga. 106 (414 SE2d 211) (1992), he argues that his retained trial counsel's performance was deficient in the following particulars: trial counsel did not move for a continuance despite having never talked to Peterson about anything other than bond prior to the call of the criminal calendar; he did not discuss with Peterson the names of available witnesses or call witnesses on his behalf; he did not argue against the

introduction of the similar transaction evidence; he did not insist on redaction of prejudicial information on the South Carolina indictment; he filed no motions on Peterson's behalf other than a bond motion; he filed no written requests to charge and failed to request a charge on lesser included offenses; he did not reserve objection to the court's charge; and he did not object to the court's initial sentence.

Peterson raised this issue in a motion for new trial and the court conducted an evidentiary hearing. Peterson and his mother testified at the hearing that trial counsel's performance was inadequate.

Peterson's trial counsel, B. J. Smith, an attorney who has practiced law for 25 years and who is also a magistrate court judge, testified that a representative of his office first contacted Peterson in June or July 1992 and conducted an initial interview with him. The report of that meeting revealed that Peterson had presented a different defense in the initial interview than that to which he testified at trial.

On June 19, 1992, an associate of Smith's attended the arraignment. Smith and his associate made a renewed motion for bond after their first motion was denied. In July 1992, the district attorney permitted Smith and an associate to review the file, and Smith concluded that no discovery motions were necessary. Smith testified that he and Peterson had numerous telephone conversations, although most of them were about bond.

On August 11, Peterson's mother contacted Smith and stated that she wanted to hire another attorney. Smith recalled that the other attorney appeared at the trial and requested a continuance, which the trial court denied. Thereafter, Smith talked with Peterson about trial strategy, including the similar transaction evidence. Smith stated that he discussed various aspects of the trial with Peterson prior to trial.

A trial court's finding that a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous. *Warren v. State*, 197 Ga. App. 23 (1) (397 SE2d 484) (1990). Here, Peterson must overcome the strong presumption that defense counsel's conduct falls within the broad range of reasonable professional conduct. *Snyder v. State*, 201 Ga. App. 66 (8) (410 SE2d 173) (1991). "To establish ineffective assistance of counsel, [a defendant] must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984)." *Gross v. State*, 262 Ga. 232, 233 (1) (416 SE2d 284) (1992). The test is whether there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel. *Gross*, supra.

We find that trial counsel was effective. We find no deficiency in Smith's failure to request a continuance, particularly in light of the fact that the other attorney did request one, and the trial court de-

nied the request.

Similarly, we find no deficiency regarding witnesses. The witnesses were not mentioned in Peterson's initial interview and, even according to his trial testimony, were cumulative of Peterson's testimony. Smith testified that Peterson did not inform him of any witnesses he wished to call. Smith's performance in this regard was not deficient; moreover, Peterson has failed to demonstrate prejudice.

Trial counsel's failure to object to the introduction of the similar transaction evidence was not deficient. Smith testified that he believed the other conviction was admissible and we agree. Peterson's argument that the evidence was insufficiently similar is without merit. Moreover, we find no prejudice and Peterson's claim in this regard is without merit. See generally *Weldon v. State*, 202 Ga. App. 150 (2) (413 SE2d 466) (1991).

Trial counsel's failure to insist upon the redaction of a notation on the South Carolina indictment was not deficient. Moreover, the notation referred to was ambiguous, and no showing of prejudice has been made.

Smith's failure to file motions on Peterson's behalf and failure to file written requests to charge were trial tactics and did not constitute ineffective assistance. See generally *Bridges v. State*, 205 Ga. App. 664 (2) (423 SE2d 293) (1992).

We reject Peterson's argument that Smith's failure to request a charge on lesser included offenses constituted ineffective assistance. Peterson argues that Smith should have requested a charge on conspiracy and attempt to commit trafficking. This claim is without merit since the evidence did not support a charge on conspiracy or attempt. Peterson's own testimony was that he had nothing to do with the drug operation and that he was trying to purchase a vehicle.

Peterson complains that trial counsel did not reserve objection to the court's charge properly. We do not find this failure constitutes deficient performance. Moreover, we have addressed the only specific instruction to which Peterson objects (Division 3, supra), and thus find no prejudice.

Peterson's final complaint is that Smith did not object to the sentence imposed. This argument is without merit in that we have deemed (Division 1, supra) that this objection was not waived.

5. Finally, Peterson contends that the evidence was insufficient to convict him. This enumeration is without merit. We find that a rational trier of fact could find from the evidence adduced at trial proof of his guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed in part; case remanded for resentencing. Birdsong, P. J., concurs. Pope, C. J., concurs specially.*

Pope, Chief Judge, concurring specially.

While I must agree with the majority's conclusion in Division 3 that the trial court's charge to the jury concerning impeachment of a witness by proof of a crime of moral turpitude constitutes harmless error in this case, I write separately to emphasize to the bench and bar that the trial court's erroneous charge on impeachment of a witness by proof of conviction of a crime of moral turpitude was completely improper under facts such as these. The evidence of defendant's 1989 South Carolina conviction was admitted solely as evidence of a similar transaction. Although defendant testified at trial, he *did not* place his character in issue and my review of the record does not reveal that defendant otherwise placed his character in issue.

In this case the certified copy of the conviction was sent out with the jury to consider for another proper purpose and there was overwhelming evidence of defendant's guilt; therefore, I am constrained to join the majority's conclusion that this error was harmless. See *Howard v. State*, 202 Ga. App. 574 (415 SE2d 45) (1992); *Sultenfuss v. State*, 185 Ga. App. 47 (5) (363 SE2d 337) (1987). That conclusion, however, does not mean that those participating in criminal trials as attorneys and presiding judges should take lightly their duty to insure that mistakes like this do not happen. I query how many more times we should allow blatant errors such as this to be considered harmless.

DECIDED FEBRUARY 22, 1994.

*Virginia W. Tinkler*, for appellant.

*J. Tom Morgan, District Attorney, Gregory J. Giornelli, J. Mike McDaniel, Assistant District Attorneys*, for appellee.