## A95A1823. MILLER v. THE STATE.
### (464 SE2d 860)

RUFFIN, Judge.

A jury convicted Ernest C. Miller of one count of selling a controlled substance in violation of OCGA § 16-13-30 (b), and the court imposed a life sentence. On appeal, Miller enumerates six errors, challenging primarily the admissibility of certain similar transaction evidence, the admission of certain post-arrest statements, and the imposition of the life sentence. For reasons which follow, we affirm in all respects with the sole exception of the sentence imposed.

Prior to trial, the court conducted a hearing to determine the admissibility of Miller's prior drug convictions as similar transaction evidence. Miller had three prior convictions for possession of cocaine with intent to distribute. Miller also pled nolo contendere to a possession of cocaine charge.

As evidence of the instant offense, the State presented testimony that Miller sold two small baggies of powdered cocaine to a female undercover police officer for $50. Only one baggie was analyzed, and it was determined to contain less than one gram of cocaine.

1. Miller asserts the trial court erred by failing to adhere to proper procedures in determining that the similar transaction evidence could be admitted at trial. Without elaborating, Miller contends the court failed to comply with the requirements of Williams v. State, 261 Ga. 640 (409 SE2d 649) (1991). However, Miller failed to provide a copy of the similar transaction hearing transcript for our review, even though his attorney admitted having a copy of it, made several references to it in his brief, and referred to it in his motion for a new trial. Miller also contends that because the March 30, 1992, hearing transcript was not made a part of the record, his case should be treated as though the hearing never took place. We reject this argument. It is well settled that " '[w]here the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed in the trial court. . . . When this is not done, there is nothing for the appellate court to review.' (Citations and punctuation omitted.) [Cit.]" Huff v. State, 207 Ga. App. 686, 687 (1) (428 SE2d 818) (1993).

2. Miller also contends the court committed reversible error by admitting his prior drug offenses as similar transaction evidence because they were not sufficiently similar to the charged offense. He further argues the introduction of the similar transaction evidence impermissibly placed his character in issue.

Because Miller failed to provide the transcript of the similar transaction hearing, our review is limited to the trial record. Miller contends there was no factual similarity between the prior acts and the indicted charge; thus, under *Faison v. State*, 199 Ga. App. 447 (1) (405 SE2d 277) (1991), the similar transaction evidence was improperly allowed. In *Faison*, however, this court held that the number of factual similarities is not determinative of admissibility. Id. "Rather, such evidence may be admitted if it is substantially relevant for some purpose other than to show a probability that (the defendant) committed the crime on trial because he is a man of criminal character. . . ." (Citation and punctuation omitted.) Id. at 449. "Drug cases are no different from any other cases. If the defendant is proven to be the perpetrator of another drug crime and the facts of that crime are sufficiently similar or connected to the facts of the crime charged, the separate crime will be admissible to prove identity, motive, plan, scheme, bent of mind, or course of conduct." *State v. Johnson*, 246 Ga. 654, 655 (1) (272 SE2d 321) (1980). See also *Collins v. State*, 205 Ga. App. 341 (2) (422 SE2d 56) (1992).

The State claims it offered the similar transaction evidence to prove Miller's identity, purpose, and way of operating. Miller's defenses included both mistaken identity and lack of motive. During the trial, Miller challenged the police officer's identification of him and attempted to imply the officer was either mistaken or lying about the cocaine sale. Because Miller raised mistaken identity at trial, proof of his identity and way of operating was clearly relevant to the State's case.

The record shows that all four similar transaction crimes offered by the State were closely related in time, occurred in the same area of town, and three involved powdered cocaine. The undercover officer testified that in her experience, powdered cocaine was rare in the area of town in which the indicted drug offense took place. Because the similar transaction crimes are sufficiently similar to the crime charged and were offered for proper purposes, we find this enumeration without merit.

3. Miller claims the court failed to properly instruct the jury as to the limited purpose for which the similar transaction evidence was admitted. He argues that the jury was confused regarding how to consider the similar transaction evidence and that the court's limiting instruction did not sufficiently restrict the purposes for which the evidence was to be considered by the jury.

(a) Miller contends that a juror's note to the judge indicated confusion among the jurors concerning their proper consideration of the similar transaction evidence. Before the close of evidence, a juror asked by note: "Is the defendant on trial for what happened on September 17, 1992 or what happened August and October of 1988? . . . It's beginning to get confusing as to what's on trial." In response, the judge told the jury that Miller was on trial only for the September 17, 1992 incident, read the indictment to the jury, and reiterated that this was the only offense for which Miller was on trial. The judge next issued preliminary instructions explaining what Miller was being tried for and how similar transaction evidence fit into the trial. The record and transcript contain no evidence that the jury was confused after the court provided preliminary instructions, final instructions, and charges. Accordingly, this argument is without merit.

(b) The record also shows that the trial court provided the jury with instructions regarding the jury's consideration of similar transaction evidence at two separate points. The transcript shows that the court paraphrased the charge on similar transactions from the Suggested Pattern Jury Instructions and that the court did not specifically limit the use of the evidence to one or two specific purposes but instead articulated the various possible uses listed in the pattern charge. However, because Miller failed to provide the transcript of the pretrial hearing, we are unable to ascertain the purpose(s) for which the court permitted the State's presentation of similar transaction evidence. Additionally, although Miller excepted to the similar transaction charge, the record and transcript do not show he made a proper written request to charge. We have previously held that "when evidence is admitted for one purpose, . . . it is not error for the court to fail to instruct the jury to limit its consideration to the one purpose for which it is admissible, *in the absence of a request to so instruct the jury*. It must be a 'proper written' request." (Citations and punctuation omitted; emphasis in original.) *Moore v. State*, 202 Ga. App. 476, 480 (3) (414 SE2d 705) (1992). While the court's instructions could have been clearer, because we are unable to determine the exact purpose(s) for which the State was permitted to use similar transaction evidence, and because the record does not show Miller made a proper written request to charge on similar transactions, we find no merit to this argument.

4. Miller contends the court erred in denying his motion in limine to suppress certain post-arrest statements made by him.

The State argued the remarks Miller sought to suppress were relevant to its case to show Miller's motive for selling drugs. The State sought to prove Miller likely made the drug sale to the female undercover officer because he wanted to recruit her into his business. In support of this theory, the State offered disputed post-arrest state-

ments Miller made after having been read his *Miranda* rights during his arrest for the most recent similar transaction. Miller remarked to the officers that he kept cocaine around "for his girls" whom the State claimed he employed as prostitutes. The written police report quoted Miller as saying: "Someone needs to take care of the ladies working the streets." The State argued Miller was actively employed as a "pimp" and used cocaine to recruit and reward the young women he employed as prostitutes.

Miller contends the admission of this evidence was not needed to establish he committed the indicted offense and that it was introduced to impugn his character by creating an image that he was a pimp who kept his prostitutes high on cocaine. The undercover officer testified that Miller questioned her about where she was staying, invited her to his home, offered her a place to stay, and told her he could provide her with additional cocaine. The State argued the undercover officer fit the pattern of young, white women Miller used as prostitutes because she resembled the women depicted in seven or eight driver's license photos found in his possession. Because Miller's motive for selling powdered cocaine was an issue, the court properly admitted the evidence to explain Miller's willingness to sell the cocaine directly to the undercover agent. The court properly determined the State's need for this evidence outweighed the prejudice to Miller. See *Williams v. State*, supra.

5. Miller claims the court improperly sentenced him to life in prison. During sentencing, Miller objected to the imposition of a mandatory life sentence under OCGA § 16-13-30 (d) on the ground that the State had not informed him of its intent to use the prior convictions for recidivist sentencing. The State countered that it notified Miller of its intent to use the previous drug convictions as similar transaction evidence. The judge stated he was not sentencing Miller pursuant to the mandatory life sentence provision of the statute but was giving the maximum sentence allowed by law. During the motion for new trial hearing, the judge reiterated his position that the sentence he imposed had "nothing to do with the statute requiring mandatory life sentence . . . [and that it was] separate and apart from that statute."

The State must provide notice of its intent to seek the mandatory life sentence under OCGA § 16-13-30 (d) because the notice requirement of OCGA § 17-10-2 (a) applies to mandatory life sentences imposed under OCGA § 16-13-30 (d). *Moss v. State*, 206 Ga. App. 310 (5) (425 SE2d 386) (1992); *State v. Hendrixson*, 251 Ga. 853 (310 SE2d 526) (1984). OCGA § 17-10-2 (a) provides that before sentencing, "the judge shall hear additional evidence in extenuation, mitigation, and aggravation of punishment, including the record of any prior criminal convictions . . . , provided that only such evidence

in aggravation as the state has made known to the defendant prior to the defendant's trial shall be admissible." Id.

The written notice requirement can be satisfied where the State provides written notice of its intention to present evidence of prior convictions as similar transactions *and* the State orally notifies the defendant of its intent to seek a life sentence under the recidivist statute. *Moss*, supra. Such subsequent oral notification must be clear, however, and in all cases, written notification is preferable in order to avoid misunderstandings concerning the notice. See id. In *Armstrong v. State*, 264 Ga. 237 (2) (442 SE2d 759) (1994), the Supreme Court held that notice of the intent to use similar transaction evidence is insufficient to provide notice of the State's intent to prove aggravation of punishment. Such notice is required to give the defendant an opportunity to not only challenge the similarity of the prior offense and the validity of the prior conviction, but also in some cases to plead to a lesser offense to avoid a sentence of life imprisonment. See id.

In this case, the State satisfied the first requirement of *Moss* by providing notice of its intention to use the prior convictions as similar transaction evidence. As to the second requirement, the State has not presented any evidence it informed Miller of its intent to use the prior convictions in seeking the mandatory life sentence. Because the State failed to show it met both requirements of *Moss*, we reverse and remand solely for resentencing.

*Judgment affirmed in part and reversed in part. Pope, P. J., concurs. Beasley, C. J., concurs specially.*

BEASLEY, Chief Judge, concurring specially.

1. With respect to Division 3, the jury charges on the similar transaction evidence are marginally sufficient. In response to the question from the juror, the court first gave a whole list of purposes for which such evidence is admissible on contested issues. Then the court said it was solely for the purpose of tending to show, if it did, defendant's "state of mind" on the indicted occasion of September 17, 1992. Then the court stated it was solely to prove "identity," that *this* defendant is the person who sold the cocaine to the officer on that date. Although both of these matters were in issue, that sort of charging can be confusing and can result in the jury using the evidence for any purpose without limitation.

In the final charge, the court repeated the comprehensive list as purposes for which the jury could consider the similar transaction evidence and then instructed it was to be considered "solely with reference to the mental state, identity, or intent of the defendant" as applicable to the offense for which he was on trial "and for no other purpose." The court's ruling, at the pretrial hearing, on the limited

purpose or purposes for which it would be admissible is not of much consequence in terms of what he told the factfinder and how the factfinder used it. The jury should be more clearly instructed so there is no doubt of the strict limitations on the use of this powerful evidence, and the use should be confined to purposes articulated by the State, which must show that the purpose relates to a real issue in the particular case and that this evidence tends to support the State's theory on that issue. See *Morris v. State*, 212 Ga. App. 779 (442 SE2d 792) (1994) (Beasley, P. J., concurring specially); *Harris v. State*, 216 Ga. App. 672 (455 SE2d 387) (1995) (Beasley, C. J., concurring specially). In this instance, I do not conclude that the court's charge was reversible error.

As to defendant's submitting instructions on the subject, he has no burden to do so and should not be required to ask for limitations when he believes the evidence is totally inadmissible for any reason. The State has the burden to show, affirmatively, that it is admissible and fits an exception to the rule of inadmissibility for this type of character evidence. Defendant did not agree to *any* limited purpose, so he could not very well submit a limiting charge. That would concede that it is admissible for that purpose.

2. As to Division 5, the State should be required to provide written notice that it intends to use the earlier conviction for sentencing purposes. We said it is "preferred" in *Moss v. State*, 206 Ga. App. 310 (5) (425 SE2d 386) (1992), but that urging need not be heeded and was not, in this case. Oral notices can open into a debate and depend on busy lawyers' recollections; such notices can at least risk misunderstanding. In *Moss*, appellant's counsel admitted that he knew it. That is not always going to be the case, and it should not be asking too much of the State to put the notice in writing and file it. After all, what is at stake is life imprisonment for defendant versus a maximum of 30 years. That would mean a lot to drug defendants, most of whom are probably relatively young.

It is notable that, despite the defendant's pattern of ongoing criminal activities and lack of remorse which prompted the court's effort to avoid the consequences of the lack of notice, the court could not consider subsection (c) of OCGA § 16-13-30 at all. It does not provide for life imprisonment, and it provides punishment for violation of subsection (a), not (b). Defendant was convicted only of violation of subsection (b). The punishment for a subsection (b) Schedule I or Schedule II narcotic offense is solely in subsection (d). The only way to sentence to life imprisonment for violation of subsection (b) is to consider the prior conviction. Without it, the maximum is 30 years imprisonment.

DECIDED DECEMBER 1, 1995.

*Cloud H. Miller III*, for appellant.
*Lewis R. Slaton, District Attorney, J. Clayton Culp, Assistant District Attorney*, for appellee.