## A96A1963. TAM v. THE STATE.
### (483 SE2d 142)

POPE, Presiding Judge.

Defendant was convicted by a jury of driving under the influence to the extent it was less safe for him to drive (OCGA § 40-6-391 (a) (1)) and following too closely (OCGA § 40-6-49). On appeal, he challenges the sufficiency of the evidence to support both convictions, the trial court's admission of similar offense evidence, and the trial court's admission of evidence relating to his refusal to take a breath test. Although the properly admitted evidence is sufficient to support the convictions, the trial court failed to make the necessary findings, on the record, before admitting the evidence of similar offenses. Accordingly, we reverse and remand for a new trial.

Officer Anthony Menichini stopped defendant for following too closely. Officer Menichini testified that defendant was driving at approximately 45 mph, and was within ten feet of the vehicle in front of him. And Officer Lou Gregoire, a second patrolman who saw defendant's car from the opposite direction, said defendant was driving so closely behind the vehicle in front of him that Gregoire could not even see the headlights on defendant's car.

When Officer Menichini stopped defendant, he noticed that defendant smelled of alcohol and had bloodshot eyes. He therefore asked defendant to perform several field sobriety tests. Defendant took the tests, and performed poorly. Officer Gregoire, who viewed defendant taking the tests from a distance, said defendant was very unsteady on his feet. Based on his observations and his experience, Officer Menichini considered defendant to be a less safe driver and arrested him for driving under the influence.

After he was read his implied consent rights, defendant agreed to take a breath test. When he got to the station, however, he put his mouth on the mouthpiece but would not blow. The operator of the Intoxilyzer 5000 breath test machine therefore was unable to get a sufficient air sample to get a reading.

1. Viewed in a light to support the verdict, this evidence is sufficient to enable rational jurors to find defendant guilty of driving

under the influence and following too closely beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Defendant argues that the trial court erred in allowing evidence of similar offenses without meeting the requirements of *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). We agree. Under *Williams*, the trial court must hold a pre-trial hearing pursuant to Uniform Superior Court Rule 31.3 (B), at which the State must show (1) that the evidence is being presented for an appropriate purpose; (2) that the accused actually committed the similar offense; and (3) that the similar offense and the charged offense are sufficiently connected or similar that proof of the former tends to prove the latter. Id. The trial court must make a determination that each of these three showings has been made, and "[t]his determination by the trial court *must be made a part of the record.*" (Emphasis supplied.) Id. at 642, n. 3.

The State suggests that defendant, as the appellant, has the burden of ensuring we have a transcript of the USCR 31.3 (B) hearing, and that since there is no transcript of the hearing in the record, we must assume that the trial court made the required determination. As a general rule, the complaining party on appeal does have the burden of ensuring we have everything in the record we need to evaluate an alleged error; otherwise, we will presume the trial court acted properly. See *Vaughan v. Buice*, 253 Ga. 540 (322 SE2d 282) (1984). And we have applied this general rule in the context of USCR 31.3 (B) hearings under some circumstances. See *Miller v. State*, 219 Ga. App. 284 (1) (464 SE2d 860) (1995); *Hightower v. State*, 210 Ga. App. 386 (1) (436 SE2d 28) (1993). In *Miller*, however, the defendant actually had a transcript of the hearing but failed to make it a part of the record on appeal. 219 Ga. App. at 284. And in *Hightower*, the defendant did not challenge the trial court's compliance with the procedural requirements of *Williams*. Rather, he argued that the trial court's determination that the State had met its burden (which was in the written order, and thus in the record on appeal) was not supported by the State's showings at the hearing (a transcript of which was not in the record on appeal). In this situation, we held that the defendant's failure to include a transcript of the hearing was fatal to his argument. *Hightower*, 210 Ga. App. at 387. In neither of these cases, both of which involved felonies being tried in Superior Court, was there any suggestion that the hearing was not taken down or recorded so that a transcript was not available. In this case, on the other hand, the USCR 31.3 (B) hearing was not recorded because the court involved does not record pre-trial hearings.

Because the admission of evidence of similar offenses is the *exception* rather than the rule, the State has the burden of ensuring

that the requirements of *Williams* are met before such evidence may be admitted — and this includes ensuring that the trial court's determination that the State has made the necessary showings is on the record. Cf. *Riddle v. State*, 208 Ga. App. 8, 11 (1) (b) (430 SE2d 153) (1993) ("the burden of conducting the requisite hearing before similar transaction evidence can be admitted at trial is placed squarely with the State and the trial court; defendant bears no burden to initiate this procedure"). In this case, the hearing on the similar offenses was not taken down or recorded in any manner. Moreover, the written order allowing the State to present its evidence was a form order which did not reflect a determination that the three affirmative showings had been made. Under these circumstances, we must conclude that the similar offense evidence was improperly admitted. And as the properly admitted evidence in this case was sufficient but not overwhelming, we cannot conclude that this error was harmless. See *Ragan v. State*, 264 Ga. 190, 192 (3) (442 SE2d 750) (1994). Accordingly, defendant's conviction must be reversed.

3. Defendant contends that testimony about his refusal to blow into the Intoxilyzer should not have been admitted because (1) the operator of the breath test machine failed to request two air samples, and (2) the State failed to show that the machine the operator used was in good working order on the date of his arrest (January 22, 1995).

(a) Under OCGA § 40-6-392 (a) (1) (B), the State must request two sequential breath samples for testing, or the results are not admissible. Defendant argues here that because the tester did not ask for a second sample, testimony regarding defendant's refusal to provide an adequate first sample should not have been allowed. Defendant failed to raise this argument in the trial court, however. At first blush, it seems doubtful that the two-sample requirement would apply when a defendant refuses to provide an adequate first sample. In any case, we decline defendant's request to address the issue without the benefit of full argument and a decision below.

(b) Under OCGA § 40-6-392 (a) (1) (A), the State must show that the machine "was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order." The easiest way to do this for breath-testing machines, without calling the inspector to testify, is set forth in OCGA § 40-6-392 (f): each time the machine is inspected, the inspector prepares a certificate of inspection, signed under oath, which states that he has inspected the machine in question and has found that all the electronic and operating components prescribed by the manufacturer are properly attached and in good working order.

In this case, the State introduced a certificate of inspection stating that the machine used on defendant on January 22, 1995, had

passed inspection on January 4, 1995. But the inspector did not sign the certificate under oath until June 12, 1995; and defendant argues that because of this delay, the certificate — the only evidence that the machine was in proper working order on January 22, 1995 — was inadmissible. While it is certainly best for the inspector to complete and sign the certificate immediately after the inspection, the statute does not require such immediacy. We therefore conclude that the delay in signing the certificate under oath went to its weight rather than its admissibility.

*Judgment reversed. Andrews, C. J., and Smith, J., concur.*

DECIDED MARCH 4, 1997.

*Dudley W. Garrett, Jr.,* for appellant.
*Gerald N. Blaney, Jr., Solicitor, Jeffrey P. Kwiatkowski, Richard E. Thomas, Assistant Solicitors,* for appellee.