## 61825. DAVIS v. THE STATE.

DEEN, Presiding Judge.

Robert Davis, Jr. brings this appeal from his conviction of two counts of rape, three counts of burglary, two counts of armed robbery, one count of aggravated assault with intent to rape, and one count of aggravated assault.

1. The defendant contends that under the ABA Standards on Joinder of Offenses, the three offenses (each containing three counts) should not have been joined solely because they were of a similar character and that the trial court erred in denying his motion to sever. The indictment charged him with entering the apartments of three different female victims over a five and one-half month period. All three of the victims were threatened at knife-point, two were robbed, one was raped, one was raped and sodomized, and the third escaped from her attacker by hitting him over the head with a whiskey bottle before he could rape her. All of the attacks were on women who lived alone in an apartment building located near I-285 and entry was obtained through a window or sliding glass door during the early hours of the morning. (The defendant is alleged to be the "Spiderman" rapist who assaulted approximately sixteen women in the same fashion in the metropolitan Atlanta area over a period of approximately one and one-half years.)

In *Dingler v. State,* 233 Ga. 462, 463 (211 SE2d 752) (1975), the Supreme Court adopted the ABA Standards on Joinder of Offenses which provides: " 'Two or more offenses may be joined in one charge, with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both: (a) are of the same or similar character, even if not part of a single scheme or plan; or (b) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.' ABA Standards [Relating to the Administration of Criminal Justice] p. 289 [1974]. On severance, the standards provide: '(a) Whenever two or more offenses have been joined for trial solely on the ground that they are of the same or similar character, the defendant shall have a right to a

severance of the offenses. (b) The court, on application of the prosecuting attorney, or on application of the defendant other than under subsection (a), should grant a severance of offenses whenever: (i) if before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or (ii) if during trial upon consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense. The court should consider whether in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.' ABA Standards, supra, p. 291. The right of severance where the offenses are joined solely on the ground that they are of the same or similar character is 'because of the great risk of prejudice from a joint disposition of unrelated charges.' ABA Standards, supra, p. 288."

In the present case, the crimes charged were so similar as to evidence a common plan or scheme and revealed an identical modus operandi. *Booker v. State,* 231 Ga. 598 (203 SE2d 194) (1974), relied upon by Davis is distinguished because the evidence in that case showed that the evidence of one crime would not be admissible in the trial of the other. Under the holding in *Johnson v. State,* 246 Ga. 654 (272 SE2d 321) (1980), all of the offenses would have been admissible at the trial of the other. In *Wigley v. State,* 140 Ga. App. 145 (230 SE2d 108) (1976), this court held that under the holding in *Dingler,* supra, the trial court had no discretion but to grant the motion when the three offenses were joined solely because they are of the same or similar character. In the present case, we find that the offenses were not joined simply because they were similar. " 'This court should not substitute its discretion for that of the trial court where no abuse of that discretion is shown. . . [Cits].' " *Stephens v. State,* 144 Ga. App. 779, 780 (242 SE2d 371) (1978). In the absence of a transcript of the hearing on the motion to sever, this court must presume that after hearing the evidence the trial court correctly exercised its discretion in denying the motion. *Nalley v. State,* 147 Ga. App. 634 (249 SE2d 685) (1978). We find no abuse in the trial court's exercise of its discretion.

2. The trial court did not err in denying defendant's motion to quash the indictment which alleged a total of nine offenses against three separate individuals. *Wingfield v. State,* 231 Ga. 92 (200 SE2d 708) (1973).

3. The trial court did not err in denying defendant's motion for the appointment of a psychiatrist. In the motion, counsel claimed that he had found a forensic psychiatrist who could form a psychological profile of the perpetrator of a series of rapes in the

metropolitan Atlanta area and, after interviewing the defendant, he might be able to give an opinion as to whether or not he fit the psychological profile. In the absence of a special plea of insanity, the court is under no duty to grant a psychiatric examination. *Jones v. State,* 246 Ga. 109 (269 SE2d 6) (1980). Even if Davis were entitled to such an evaluation, as stated in Division 1 above, in the absence of a transcript of the hearing on the motion we must presume that the trial court correctly exercised its discretion.

4. There is no merit to defendant's argument that the trial court erred in denying his motion to suppress. The written motion only contested the admissibility of a palm print found at the residence of one of the victims. At the hearing on the motion, he also tried to have the court exclude evidence of blood, hair and saliva samples taken from him pursuant to the execution of a search warrant. Any attempt to orally amend the motion at the hearing to include the other samples is procedurally defective and unacceptable. *Rick v. State,* 152 Ga. App. 519 (263 SE2d 213) (1979). Even if his motion were valid, this enumeration is without merit. At the hearing on the motion, counsel conceded that if the underlying arrest was lawful, there would be probable cause for the issuance of the warrant. The evidence shows that appellant was apprehended after police officers investigated a rape-robbery and a second robbery was reported at a nearby apartment building. Near the scene of the second robbery, a woman's pocketbook was found abandoned and contained Davis' temporary driver's license. A check of the license revealed that Davis had been convicted of burglary and rape and was out on parole. The detective compiled a photographic line-up and showed it to six recent rape-robbery victims. Three of them identified the defendant as their assailant. The detective also checked defendant's former place of employment and learned that he had an unusual speaking voice similar to that described by the victims. The evidence established probable cause for Davis' arrest.

5. The trial court did not err in admitting evidence of voice identification which was made by the witnesses after viewing a videotape line-up in which the participants read sentences composed by the police officers.

The three victims gave similar descriptions of their assailant's voice to the investigating officers. None of the victims were present during the videotaping of the voice exemplar and no suggestion was made to the victims as to which voice to choose. All three victims and two other witnesses stated that they recognized the voice on the tape as that of their attacker and one woman testified that she broke down crying when she heard the voice. The other victims of the rapist testified that hearing one woman cry did not affect the identification

because they had already identified the voice or were only vaguely aware of the outburst. Under the test set forth in *Payne v. State,* 233 Ga. 294 (210 SE2d 775) (1974), we find that the pre-indictment investigative videotape line-up was not impermissively suggestive and find no error in the trial court's ruling.

Requiring a suspect to give a voice exemplar for identification purposes does not violate his privilege against self-incrimination accorded by the United States or Georgia Constitutions or the statutes of this state. *Tate v. State,* 153 Ga. App. 508 (265 SE2d 818) (1980). The defendant was informed that he would appear in a line-up at 1:00 p.m. the following day and was asked if he wished to have counsel present. He said that he did not. At the line-up, he decided he wanted to have counsel present. This request was denied and he did not refuse to give the voice exemplar. The defendant did not have the right to have counsel present at a line-up which was held prior to his indictment and the initiation of any adversary judicial criminal proceedings. *Jones v. State,* 243 Ga. 820 (256 SE2d 907) (1979); Kirby v. Illinois, 406 U. S. 682 (92 SC 1877, 32 LE2d 411) (1972).

6. It was not error for the trial court to admit evidence of visual identification of Davis at the pre-indictment line-up. (This was the live line-up which was videotaped.)

The denial of appellant's right to counsel is discussed in Division 5 of this opinion, and his presence was not due to an illegal arrest as discussed in Division 4. As he did not raise the issue of the failure to hold a prompt preliminary hearing in the court below, that issue cannot be raised for the first time on appeal. *Williams v. State,* 144 Ga. App. 42 (240 SE2d 311) (1977). The line-up was not impermissively suggestive. It consisted of six black males similar in appearance to the appellant and he was permitted to choose his position in the line-up. No one suggested to the victims who viewed the live line-up as to which person to pick, each victim viewed the line-up separately from the others with no other victims present. Three victims made positive identification from the line-up. *Mullins v. State,* 147 Ga. App. 337 (248 SE2d 706) (1978). Whether or not persons in the line-up fit descriptions given by victims to the police is irrelevant in considering whether a line-up was unduly suggestive. *Caylor v. State,* 155 Ga. App. 489 (270 SE2d 924) (1980). A victim's expectation of seeing her attacker in the line-up does not render it impermissibly suggestive. *Mitchell v. State,* 236 Ga. 251 (223 SE2d 650) (1976). The defendant does not cite any authority for his argument that he was entitled to have a "dummy" line-up held, and we are unable to find any such requirement in Georgia law. As the identification procedures were not suggestive, it is not necessary to

reach the issue of substantial likelihood of irreparable misidentification. *Johnson v. State,* 150 Ga. App. 405 (258 SE2d 22) (1979); *Cheeves v. State,* 157 Ga. App. 566 (1981). Therefore, it was not error to admit evidence of the line-up identification, and it was not error to allow into evidence the victims' in-court identification of their attacker.

7. It was not error for the trial court to admit evidence of similar crimes. Such evidence is admissible to show motive, plan, scheme, or bent of mind. *Allen v. State,* 152 Ga. App. 481 (263 SE2d 259) (1974). This rule has been liberally applied in cases involving sex offenses. *Hunt v. State,* 233 Ga. 329 (211 SE2d 288) (1974). For such evidence to be admissible the state is required to show that the accused was the perpetrator of the independent crime and that there is sufficient similarity between the crimes so that proof of one tends to establish the other. *Johnson v. State,* 246 Ga. 654, supra. The evidence showed that these criteria were met. All of the witnesses identified the appellant as their attacker and the method of the attack was similar in all the crimes; he entered the apartments through sliding glass doors, covered the victim's head, tied her up, raped and robbed her.

8. It was not error for the trial court to exclude the testimony of a clinical psychologist who would have testified as to how a police line-up should be conducted. The court found that he was not an expert on the conduct of police line-ups, had never observed the eyewitnesses in the case and that the reliability of the witnesses was thoroughly explored before the jury. The defendant has cited no authority to support this enumeration and the Georgia Supreme Court has held that jurors can readily determine for themselves whether eyewitness identification testimony is reliable. *Jones v. State,* 232 Ga. 762 (208 SE2d 850) (1974).

9. The trial court did not err in sustaining the state's objection to the voir dire question: "Would you expect Mr. Davis, the defendant here, to come forward with evidence to prove that he was not the guy?" The court requested counsel to rephrase the question to ask a prospective juror if she could follow the instructions of the court. The question was rephrased twice, but each time it was objected to because it asked the juror to answer the same question. We find no error. The question asked would not illustrate prejudice or interest of the juror; it was a technical legal question. *Goughf v. State,* 232 Ga. 178 (205 SE2d 844) (1974); *Bethay v. State,* 235 Ga. 371 (219 SE2d 743) (1975). Control of the voir dire proceeding is in the discretion of the trial court. *Legare v. State,* 243 Ga. 744 (257 SE2d 247) (1979). We find no abuse of that discretion.

10. The trial court did not err in allowing Mr. Peterson, an expert in the field of microanalysis, to testify as to his "feelings."

When the objection was made it was sustained and the question was rephrased. As no further objection was made, there is nothing for this court to review on appeal. *Moore v. State,* 153 Ga. App. 511 (265 SE2d 821) (1980).

11. The trial court was not required to excuse juror Hanley for cause. When questioned about his knowledge of the case, he stated he had not read anything about the case, but had heard something on the radio about a week before trial about "Spiderman" being caught for robbery and rape. He stated that he did not get the impression that the man who was apprehended was guilty and that he did not know the magnitude of the problem with a burglar-rapist in the Atlanta area. He further stated that he believed that what he heard was the grand jury findings and that it would have to be proved to him that the defendant was "Spiderman." He said he assumed that the police had some kind of evidence or the defendant would not be in court, but he did not think that the police were always right. He stated that he had no fixed opinion as to the defendant's guilt or innocence, that he was willing to follow the instructions of the court and that he would be a fair and impartial juror.

As the record does not show any bias or prejudice against the defendant on the part of the juror, the mere fact that he had heard that the defendant had been arrested and indicted does not show prejudice. The findings of the grand jury and the fact of defendant's arrest were both presented at trial. See *Franklin v. State,* 245 Ga. 141 (263 SE2d 666) (1980). In view of the juror's responses to the questions, the trial court correctly exercised its discretion in not striking him for cause. *Depree v. State,* 246 Ga. 240 (271 SE2d 155) (1980).

12. Contrary to Davis' assertion, the trial court did charge on alibi.

13. The trial court was not required to instruct the jury that the state was required to prove that the crimes occurred at a place and time certain. As the date alleged in the indictment was not averred to be material, the trial court was not required to give such a charge. *Wade v. State,* 147 Ga. App. 511 (249 SE2d 323) (1978). Appellant's argument that his evidence of alibi mandated such a charge is likewise without merit. He was not prejudiced in his alibi defense by a switch in dates. The dates alleged in the indictment were the dates presented in evidence at trial. See *Thomas v. State,* 158 Ga. App. 97 (279 SE2d 335) (1981).

*Judgment affirmed. Banke and Carley, JJ., concur.*

Decided May 15, 1981

*Thomas E. Maddox, Jr.,* for appellant.
*Lewis R. Slaton, District Attorney, Margaret V. Lines, Joseph J. Drolet, Dean Davis, Assistant District Attorneys,* for appellee.