A92A2278. MOORE v. THE STATE.
(427 SE2d 779)

BEASLEY, Judge.

Appellant was convicted of aggravated assault (OCGA § 16-5-21), kidnapping (OCGA § 16-5-40), and rape (OCGA § 16-6-1). He challenges the admissibility of evidence of other rapes committed by him,

the mode of proof of two of these crimes, and the trial court's order that he disclose the identity of a defense witness.

### The present crime

Moore abducted a stranger at gunpoint from a bus stop, took her to a secluded lot, and engaged in forcible sexual intercourse after first having difficulty obtaining an erection. Afterwards, he took her to her job, which had been her destination.

When the victim returned to her job, she reported the rape immediately. She was crying and in an hysterical state, and she was taken to the hospital. Appellant was subsequently identified through a nolo contendere plea form bearing his name and found by the police at the crime scene after being taken there by the victim. Initially, appellant told the police that he did not know the victim. However, at trial he sought to establish that he did know her; that she was a prostitute and a user of crack cocaine whom he had been with on prior occasions; that he had paid her to have sex on the day in question, but he did not pay her the agreed amount because the act of sexual intercourse had not been completed; and that she accused him of rape because of this. The State presented rebuttal evidence.

### The other crimes

A former Atlanta police officer testified that on July 5, 1969, he investigated a rape complaint by Jennie Cooley. Although he did not recollect the case, he testified following examination of his police report. He answered affirmatively when asked whether he was willing to swear under oath to the contents of the report. He testified that he had talked with the victim at Grady Hospital at about 10:35 a.m., and she told him that at 9:45 a.m. she was at a bus stop when a man whom she did not know drove up and asked her if she wanted a ride. She accepted the ride but rather than take her where she wanted to go, he drove her to a secluded, wooded area. He brandished a gun, made her get out of the car and go into the woods, robbed and raped her, and then left her in the woods. She later identified appellant as the culprit. The State introduced a certified copy of appellant's indictment, plea of guilty, and fifteen-year sentence (to serve ten years with five years suspended). The State presented evidence that Cooley has died.

An Atlanta police detective testified that on August 19, 1969, he investigated a rape complaint by Doris Thomas. Although he had no present recollection of the case, he also testified from his police report. He answered affirmatively when asked whether he was willing to swear under oath to the contents of the report. He testified that he had talked to the victim at about 10:15 a.m. concerning a rape which

occurred at 9:00 a.m. that day. She stated that while she was waiting at a bus stop, a man drove up, pointed a gun at her, and ordered her to get into his car. He robbed her and took her to a secluded, wooded area where he raped her. Afterward, he brought her back to the bus stop. The State introduced a certified copy of appellant's indictment, plea of guilty, and fifteen-year sentence (to serve ten years with five years suspended) for her rape. The State presented evidence that it had tried unsuccessfully to locate Thomas.

Linda Jordan testified that at approximately 7:00 p.m. on January 16, 1969, she was abducted at gunpoint by appellant as she was unlocking her car door in a downtown Atlanta parking lot. He rambled through her pocketbook and asked her where her money was. He instructed her to get down on the floorboard or he would blow her head off. He drove her to a parking lot in a secluded area, told her to take her clothes off, and raped her. However, he was having trouble obtaining an erection. When she asked him how he was going to rape her if he could not get an erection, he slapped her and told her to shut up, at which point he expelled sperm all over her. The State introduced a certified copy of appellant's indictment, plea of guilty, five-year sentence for kidnapping, and five-year sentence for rape.

Frances Thompson testified that in 1979 she worked in an office building in downtown Atlanta. She was accosted by appellant while she was in a rest room in the building. He had a gun which he put to her head. He told her not to scream or he would kill her. He asked her if she had any money, which she did not. He took her into a stall and told her to take her clothes off. Although he was having trouble maintaining an erection, he raped her. The State introduced a certified copy of appellant's indictment, plea of guilty, and 15-year sentence.

1. Appellant contends that evidence of the 1969 Cooley and Thomas rapes was inadmissible because they were too remote, that evidence of the 1979 Thompson rape was inadmissible because it was dissimilar, and that evidence of all four of the other rapes was inadmissible because their prejudicial impact outweighed their probative value.

(a) Evidence of similar crimes is inadmissible *except* upon proof the defendant was the perpetrator of the independent crime, there is a sufficient similarity or connection between the independent crime and the crime charged so that proof of the former tends to prove the latter, and the evidence of the independent crime is offered not to raise an improper inference as to the accused's character, but for some permissible purpose regarding an issue in the case. *Stephens v. State*, 261 Ga. 467, 468 (6) (405 SE2d 483) (1991); *Williams v. State*, 261 Ga. 640, 641 (2) (409 SE2d 649) (1991).

This exception has been most liberally extended in cases involv-

ing sexual offenses, " 'for a reason peculiar to those crimes. . . .' " *Dorsey v. State*, 204 Ga. 345, 349 (2) (49 SE2d 886) (1948) (citing 1 Wharton's Criminal Evidence, p. 170, § 42; and holding that evidence of other rapes committed by the defendant is admissible where there is a similarity of method or modus operandi, as where the defendant lies in wait at an hour when the streets are deserted until a lone female approaches and then forces her into an area behind a house or building, or where the rapist steals into a room at night and surprises the victim in bed, or where the attacker forces his victim into his car or forces himself into her car).

"[W]here forcible sexual assaults are involved, there is at least much sociological evidence to support the conclusion that this type of deviant sexual behavior is a sufficiently isolated abnormality so that proof of the propensity of the defendant to engage in it is at least admissible, and to this extent 'proof of the one tends to establish the other.' 'There are exceptions to this (other crimes) rule, and these exceptions have been rather liberally extended in cases of sexual crimes.' *Hunt v. State*, 233 Ga. 329, 330 (211 SE2d 288) [(1974) overruling] *Larkins v. State*, 230 Ga. 418 (197 SE2d 367) [(1973)]. . . ." *Sudlow v. State*, 140 Ga. App. 146, 147 (230 SE2d 106) (1976); see *McNeal v. State*, 228 Ga. 633, 637 (5) (187 SE2d 271) (1972) (victims accosted early in the morning at a bus stop, taken into the woods, and raped); *Davis v. State*, 158 Ga. App. 549, 553 (7) (281 SE2d 305) (1981).

Under the previously cited cases, the multiple similarities between the Cooley and Thomas rapes and the present rape met the requirement of similarity.

There were some similarities but also some differences between the Jordan rape and the present rape, but one rather distinctive feature of both was appellant's inability to obtain an erection in order to engage in sexual intercourse, followed by his ejaculation on the victims' bodies. There were few similarities between the Thompson rape and the present rape except for appellant's difficulty in maintaining an erection. Since, however, evidence of the Cooley and Thomas rapes was admissible, it is highly probable that any error on the part of the trial court in admitting evidence of the Jordan and Thompson rapes did not contribute to the verdict. *Jones v. State*, 175 Ga. App. 132 (1) (332 SE2d 915) (1985).

(b) Appellant cites *Gilstrap v. State*, 261 Ga. 798 (1) (410 SE2d 423) (1991), in support of his argument that evidence concerning the 1969 Cooley and Thomas rapes should have been excluded because of remoteness.

In *Gilstrap*, the Court held that a crime which took place 31 years in the past was too remote, while citing without disapproval *Rich v. State*, 254 Ga. 11, 14 (1) (325 SE2d 761) (1985), and *Cooper v.*

*State*, 173 Ga. App. 254, 255 (1) (325 SE2d 877) (1985), where lapses of 11 years and 19 years, respectively, did not prohibit the admission of evidence of similar transactions. The lapse in the present case is 22 years, so that time wise it is more akin to *Cooper* than *Gilstrap*. But the fact that defendant was incarcerated during many of the intervening years precluded opportunity to commit similar offenses and explained their remoteness so they were not legally irrelevant. See *Anderson v. State*, 183 Ga. App. 669, 671 (1) (359 SE2d 688) (1987). In such cases, the lapse of time goes to the weight and credibility of the evidence and not its admissibility. *Cooper*, supra, 173 Ga. App. 254-255 (1).

Furthermore, as argued by appellant, *Gilstrap* noted that the purpose of a statute of limitation (which under OCGA § 17-3-1 is seven years for rape) is to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time, and the Court held that a like rationale applies to the admission of evidence of similar transactions. In this case, unlike *Gilstrap*, appellant was prosecuted for and convicted of the similar crimes, so he already has had the opportunity to defend himself.

(c) The probative value of the other incidents is measured by the purpose for which they are offered, which in this case was to prove defendant's state of mind, bent of mind, and intent so as to overcome the defense of consent. It was a critical issue because the only parties present were the defendant and the victim, and credibility of these two disparate witnesses was crucial. See *Williams v. State*, supra at 642. The court was authorized to conclude that this, particularly in light of the court's limiting charge, outweighed the prejudicial impact.

2. Appellant contends that the trial court erred in admitting the police officers' testimony concerning the Cooley and Thomas rapes, since this was inadmissible hearsay and violated appellant's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution.

*Higgs v. State*, 256 Ga. 606, 608 (351 SE2d 448) (1987), and *Jackson v. State*, 202 Ga. App. 582, 586 (2) (414 SE2d 905) (1992), consider hearsay and Confrontation-Clause issues concerning police officers who were allowed to testify concerning out-of-court statements made to them by witnesses.

In *Higgs*, a witness told a GBI investigator several hours after the defendant shot and killed the victim that she had seen the defendant do it. She later married the defendant and asserted her right not to testify against him. The investigator was allowed to testify as to the out-of-court statement of the unavailable witness.

The Court rejected the argument that the admission of this hearsay violated the defendant's rights under the Confrontation Clause.

The Court recognized that the United States Supreme Court resolves confrontation challenges based on the admission of hearsay testimony through a two-part test. First, in the usual case, including cases where prior cross-examination has occurred, the prosecution must either produce or demonstrate the unavailability of the hearsay declarant; this is a rule of necessity. Second, as recognized also in *Jackson*, supra at 586, once a witness is shown to be unavailable, the Confrontation Clause countenances only hearsay marked with "particularized guarantees of trustworthiness." The Supreme Court held that the hearsay in *Higgs* passed this test. The trustworthiness of her statement could be found in the fact that it was made within hours of the killing in the course of an official investigation and had not been subsequently disavowed by her, among other factors.

In *Jackson* the defendant broke into a house and robbed, raped, and sodomized the victim. A neighbor told police that a man whom she knew as bearing the same nickname as the defendant had appeared at her house that night and left after she produced a gun. The neighbor died prior to trial, and the police officer testified as to her statement. This Court held that this testimony was admissible, following *Higgs*.

In this case, both Officers Hinshaw and Dorsey testified that they were the first law enforcement officers to interview the respective victims at medical facilities to which they had been taken within hours after the rapes, and the reports from which the officers testified concerned these initial interviews. By pleading guilty to these crimes, appellant waived his earlier opportunity to cross-examine the victims when they made the complaints against him. Although appellant challenged the admissibility of the officer's testimony concerning these crimes, he admitted that he had pled guilty to these crimes and that he had in fact committed them, and he did not contradict the facts underlying his commission of them as testified to by the officers.

As in *Higgs* and *Jackson*, the trial court did not err in admitting the police officers' testimony out of necessity under OCGA § 24-3-1 (b). The admission of this evidence did not violate his rights under the Confrontation Clause, since there were particularized guarantees of trustworthiness.

We need not resolve the State's arguments that the officers' testimony was admissible pursuant to OCGA § 24-3-3 as part of the res gestae and pursuant to OCGA § 24-9-69 as past recollection recorded. See *Jackson*, supra.

3. Appellant contends that the trial court erred in compelling defense counsel to identify a defense witness at the conclusion of an in-camera hearing on the rape-shield statute prior to the State's commencement of its case-in-chief.

At the hearing, defense counsel stated that he would present

three witnesses in support of appellant's claim that the victim had been with him on prior occasions. The trial court directed counsel to disclose the identities of these witnesses, apparently because of crowded conditions at the Bibb County Law Enforcement Center and the fact that the witness might have been released. Counsel made the disclosures, although the identity of two of the witnesses had already been disclosed, as subpoenas had been issued compelling their attendance. Counsel subsequently entered an objection and moved the court to consider a mistrial, arguing that a criminal defendant is not required to disclose the identity of witnesses to the prosecution, and appellant was prejudiced by being required to do this in that it gave the State additional time to establish grounds to impeach the previously undisclosed witness (as through the NCIC computer). See *Gerald v. State*, 189 Ga. App. 155, 157 (5) (375 SE2d 134) (1988). The State impeached this witness through evidence that he had been convicted of six burglaries.

It is within the discretion of the trial court to order production of a list of defense witnesses in order to enforce the rule of sequestration. *Fugitt v. State*, 254 Ga. 521, 522 (4) (330 SE2d 714) (1985); *Gerald*, supra. Appellant argues that since the witness was in custody, disclosure of his identity to enforce the sequestration rule was unnecessary. While this is true, the trial court cited other plausible reasons for ordering disclosure, and appellant did not object to this until after he made the disclosure. The trial court was not required to declare a mistrial upon his belated objection.

*Judgment affirmed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED JANUARY 7, 1993 —
RECONSIDERATION DENIED FEBRUARY 22, 1993 —

*Buford & Buford, Floyd M. Buford, Jr.*, for appellant.
*Willis B. Sparks III, District Attorney, Graham A. Thorpe, Assistant District Attorney*, for appellee.