## A97A1565. McBEE v. THE STATE.
(491 SE2d 97)

ELDRIDGE, Judge.

Appellant Michael McBee appeals his October 13, 1995 conviction for rape and aggravated sodomy. For the reasons outlined below, we affirm.

"On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. *Grant v. State*, 195 Ga. App. 463[, 464] (1) (393 SE2d 737) [(1990)]." *Wells v. State*, 208 Ga. App. 298, 299 (1) (430 SE2d 611) (1993). Further, the admission of evidence is a matter which rests largely within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Samuels v. State*, 223 Ga. App. 275 (477 SE2d 414) (1996); *Hestley v. State*, 216 Ga. App. 573 (455 SE2d 333) (1995); *Bell v. State*, 203 Ga. App. 109 (416 SE2d 344) (1992).

In the case sub judice, the evidence showed that appellant met the victim at a Chattanooga, Tennessee lounge in August 1994. Approximately four weeks later, on September 24, 1994, appellant and the victim met again by chance at the same lounge and danced together three times. As the victim was leaving the lounge at approximately 2:00 the next morning, appellant approached her in the parking lot and asked her for a ride home, saying that his ride had already left. Since appellant's home in Ringgold, Georgia, was on the victim's way home to Dalton, Georgia, she agreed to give appellant a ride.

Upon arriving at appellant's home, the victim asked to use appellant's bathroom. While she was using the bathroom, appellant walked in; she immediately told him to leave, which he did. However, as the victim walked out of the bathroom, appellant, who had

removed his shirt, grabbed her and pulled her into his bedroom, which was adjacent to the bathroom. Appellant demanded that she take off her clothes; the witness complied because he was bigger, stronger, and she was afraid of him. Appellant proceeded to rape and anally sodomize the victim.

During the act, however, someone rang the doorbell to appellant's duplex; appellant stopped his assault, put on his jeans, and answered the door. While appellant and his male visitor talked in the living room, the victim put on some of her clothes and rushed out the front door, past both men. The victim drove to a Chevron station and immediately called the police. The victim was interviewed by police officers, directed the officers to appellant's duplex, and was examined at the local hospital. During the medical examination, which occurred at approximately 5:15 a.m. the day of the assault, a nurse took a photograph of a bruise on the victim's shoulder; the photograph was introduced as evidence. The nurse testified that the victim was distraught, angry, and tearful; diazepam (commonly known as Valium) was prescribed to calm her down.

Detective Vic Wells of the Catoosa County Sheriff's Department interviewed the victim before the medical examination and testified that the victim "was very upset, she was crying, she was scared, she was mad, she didn't know what to do, and she wanted help." Detective Wells also noticed the bruise on the victim's shoulder. The victim told Detective Wells that, in her haste to flee appellant's home, she had left her belt, panties, and a glass in appellant's bedroom. Detective Wells contacted a magistrate, submitted an affidavit, and secured a search warrant for appellant's duplex; such warrant was executed at approximately 7:50 a.m. the same day. Upon arriving at appellant's duplex, police officers were met by appellant on the porch. The officers told appellant that they had a search warrant, but did not tell him why it had been secured. Even so, an officer testified that appellant spontaneously stated that "if we was [sic] there about the girl that brought him home last night, that he didn't rape her, that they had sex."

During the search, the officers recovered the victim's belt and panties; they also seized photographs of nude and semi-nude women in various sexual poses.

Appellant was arrested a few days later and charged with rape and aggravated sodomy. A hearing on appellant's motion to suppress the seized evidence was held on March 23, 1995; the motion was denied. Appellant was tried by a jury in October 1995 and convicted on October 13, 1995. He was sentenced to life imprisonment for the rape and was given a consecutive 20-year sentence for aggravated sodomy. Appellant's motion for a new trial was denied on April 17, 1996, and he timely appealed.

1. In the first enumeration of error, appellant asserts that the trial court erred in allowing the State to introduce as similar transactions evidence of appellant's conviction for criminal trespass and evidence of a non-sexual dispute with a former girl friend. For the reasons set forth below, there was no error.

Georgia's courts have long held that evidence of a separate crime unfairly places a defendant's character in issue and therefore is inadmissible. *Williams v. State*, 261 Ga. 640, 642 (409 SE2d 649) (1991). However, there are exceptions to the rule, so that before any evidence of independent offenses or acts may be admitted, a hearing must be held during which the State must make three affirmative showings as to each independent act it seeks to admit. Id. at 642. "The first of these affirmative showings is that the state seeks to introduce evidence of the independent offense or act, not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of admissibility." Id. at 642 (2) (b). Such appropriate purposes include proving malice, intent, motive, plan, scheme, course of conduct, or bent of mind. Id. at 642, n. 2; *Johnson v. State*, 242 Ga. 649, 653 (250 SE2d 394) (1978); *O'Neal v. State*, 170 Ga. App. 637 (318 SE2d 66) (1984). "The second affirmative showing is that there is sufficient evidence to establish that the accused committed the independent offense or act. The third is that there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter." *Williams v. State*, 261 Ga. at 642 (2) (b); see also *Davis v. State*, 249 Ga. 309, 311 (290 SE2d 273) (1982).

"Similarity between the charged crime and the extrinsic crime is an important factor pertinent to a determination of the admissibility of the extrinsic crime. However, it is not the only factor, nor is it necessarily the controlling factor. The ultimate issue in determining the admissibility of evidence of other crimes is not mere similarity but relevance to the issues in the trial of the case. Depending upon the purpose for which the extrinsic offense is offered, the state may be required to prove a high degree of similarity between relevant characteristics of the extrinsic offenses and the charged crimes, or it may only have the burden of showing a logical connection between crimes which are essentially dissimilar." (Citation and punctuation omitted.) *Ward v. State*, 262 Ga. 293, 295 (2) (417 SE2d 130) (1992), quoting *Felker v. State*, 252 Ga. 351, 359 (314 SE2d 621) (1984); *Farley v. State*, 265 Ga. 622, 624 (458 SE2d 643) (1995); *Wells v. State*, 208 Ga. App. at 302.

Further, "[w]here forcible sexual assaults are involved, there is at least much sociological evidence to support the conclusion that this type of deviant sexual behavior is a sufficiently isolated abnor-

mality so that proof of the propensity of the defendant to engage in it is at least admissible, and to this extent proof of the one tends to establish the other." (Citation and punctuation omitted.) *Moore v. State*, 207 Ga. App. 412, 415 (1) (a) (427 SE2d 779) (1993). Particularly in the area of sexual offenses, the admissibility of similar transaction evidence is liberally construed. *Wells v. State*, 208 Ga. App. at 300, 303 and cases cited therein.

Evidence of an earlier assault on a woman is "material [to] the issue of consent or the lack thereof, and [has] a direct bearing on appellant's bent of mind." *O'Neal v. State*, 170 Ga. App. at 638 (1); see also *Thomas v. State*, 234 Ga. 635, 636 (217 SE2d 152) (1975); *Hunt v. State*, 233 Ga. 329 (211 SE2d 288) (1974). Such evidence would tend to rebut appellant's claim of consent by establishing that appellant has a propensity to initiate or continue an encounter without a woman's consent and, in fact, against her explicit request to stop. See *Farley v. State*, 265 Ga. at 623-624 and cases cited therein; see also *Sudlow v. State*, 140 Ga. App. 146, 147 (230 SE2d 106) (1976) (evidence of a previous assault "is justifiable rebuttal evidence where the defendant admits the transaction but denies the coercive element"). Such evidence also corroborates the victim's testimony that appellant acted in the manner charged. *Touchton v. State*, 210 Ga. App. 700, 701 (437 SE2d 370) (1993). "[R]elevant 'other transactions' evidence is admissible notwithstanding its tendency to discredit the character of the defendant." *Farley v. State*, 265 Ga. at 623, 625; see also *O'Neal v. State*, 170 Ga. App. at 638.

In the case sub judice, a witness testified that she had a brief relationship with appellant, but that she had broken up with him. Shortly thereafter, appellant arrived unannounced at her apartment in the middle of the night; he said he wanted to talk, and the witness let him in. Appellant shoved the witness against a wall, dragged her into the bathroom, and held her down. After turning on the water, he told the witness that she could "yell as loud as you want" and no one would hear her. He also told the witness that he could kill her "and no one would know." He then told the witness to say that she loved him. After several hours, she calmed him down, and he left. The witness did not report the incident to police because she "didn't really want to make him any madder than he already was at me, I was kind of scared of him."

Six months later, the same witness awoke in the middle of the night to find appellant standing in her bedroom without her permission. Appellant pled guilty to criminal trespass in that incident.

While appellant correctly points out that the prior acts by appellant did not involve an actual sexual assault on the witness, his attempt to capitalize on the dissimilarities misses the mark. The fact that appellant previously surprised and assaulted a woman,

restraining her until she told him that she loved him, is highly relevant to his bent of mind and course of conduct, i.e., whether he is likely to force himself on women without their consent. See *Johnson v. State*, 242 Ga. at 653; see also *Smith v. State*, 267 Ga. 363, 364 (3) (478 SE2d 379) (1996) (similarity between acts included "extreme rage against the victims"); *Ward v. State*, 262 Ga. at 295 (2) (the extrinsic transactions showed that the defendant was "obsessed with having control and dominance over women"); *Smith v. State*, 225 Ga. App. 553 (484 SE2d 515) (1997). For this reason, the testimony of the witness regarding the prior assault and trespass was sufficiently similar and connected to the crime for which appellant was being tried, so that the evidence was relevant and admissible to show appellant's course of conduct, lack of consent, bent of mind, motive, plan, or scheme. There was no abuse of discretion in the trial court's decision to admit this evidence.

2. In the second enumeration of error, appellant asserts that the trial court erred in allowing the State to introduce evidence of a pending contempt action to establish the lack of trustworthiness and credibility of appellant's witness. While we agree that the impeachment was improper, we find that it did not rise to the level of reversible error.

The witness was appellant's former defense attorney, who had been charged with contempt in an unrelated civil action for falsifying evidence; he had not yet received a hearing on the charge. The witness no longer represented appellant in the case sub judice and apparently was called to testify in order to impeach another defense witness. In an effort to "test the truthfulness of this witness," the State questioned the witness about the pending charge, and the witness was allowed to explain in detail the circumstances that resulted in the pending charge. Appellant claims that raising such issue "significantly injured the credibility of Appellant," so that a new trial is required.

However, while we agree that the attempted impeachment of appellant's former counsel was improper, it does not rise to the level of harmful error, particularly in light of the substantial evidence of appellant's guilt. The witness' only apparent value to appellant was his assertion that another defense witness, who lived in the adjoining unit of appellant's duplex, had made a prior inconsistent statement regarding whether or not he could hear noises emanating from appellant's duplex. Therefore, even if the jury inferred, as appellant asserts, that appellant's former counsel was not being truthful in his testimony, the only harm was that the jury would disregard his testimony, thereby leaving the credibility of the other defense witness unchallenged. Further, the former counsel was allowed to explain the circumstances of the pending charge and to stress that it was unre-

lated to appellant's case. Finally, there is no basis upon which the jury could form a nexus between the former counsel's allegedly fraudulent conduct and the appellant's defense in the case sub judice, as the former counsel neither represented appellant at the trial nor put forward appellant's defense therein.

For a conviction to be reversed, appellant must show both error and harm. See *Moreland v. State*, 213 Ga. App. 75 (443 SE2d 701) (1994); *Gann v. State*, 190 Ga. App. 82 (378 SE2d 369) (1989). Such impeachment, while improper, did not rise to the level of reversible error.

3. Appellant asserts that the trial court erred in denying his motion to suppress evidence seized pursuant to a search warrant which he characterizes as a "general warrant" giving complete discretion to the police officers conducting the search.

In the case sub judice, the warrant was issued by a magistrate upon the affidavit of Detective Wells, to whom the victim had specifically described items she had left at the scene of the crime, including panties, a belt, and a "Hard Rock Cafe" glass. The affidavit noted that "certain personal items" of the victim had been left at appellant's home. The warrant authorized a search of appellant's residence for "[e]vidence in regards to the crime committed therein which is . . . rape."

The seized items, including several photographs of nude and semi-nude women, were the result of a search for the victim's belongings. The police officers' testimony indicates that the search was reasonably limited to appellant's bedroom, the site of the assault. Apparently, it became obvious during the search that appellant may have put away evidence of the assault, hanging the belt on the back of the bedroom door and putting the panties in the closet. Even though the belt was in plain sight, the officers were justified in manipulating clothing, personal items, etc. in their continuing search for the panties and the missing glass. It was during this search that a wooden box containing the photographs inadvertently was found. The photographs were seized as evidence of a transaction similar to the rape, but not as evidence of another crime. See *Dugan v. State*, 130 Ga. App. 527, 531 (203 SE2d 722) (1974). Compare *Lockhart v. State*, 166 Ga. App. 555, 557 (305 SE2d 22) (1983). The police officers were not compelled to overlook relevant evidence of the rape (see Division 6, infra) simply because it was not specifically enumerated in the search warrant. See generally *Brown v. State*, 187 Ga. App. 714, 715 (371 SE2d 257) (1988). "The fact that the police officers seized items not listed in the warrant did not render the search a general one or make it unlawful." (Citation and punctuation omitted.) *Jarvis v. Rubiano*, 244 Ga. 735, 737 (2) (261 SE2d 645) (1979); see also OCGA § 17-5-21 (b).

The record does not indicate that the police officers undertook a generalized search for additional contraband, other incriminating evidence, or evidence of other crimes. In fact, it appears that the search and seizure was "reasonably related in scope to the justification for their initiation." *Terry v. Ohio*, 392 U. S. 1, 18-19, 29 (88 SC 1868, 20 LE2d 889) (1968); *Grant v. State*, 220 Ga. App. 604, 607 (469 SE2d 826) (1996), citing *Lockhart v. State*, 166 Ga. App. at 557.

This case is distinguishable from *Grant v. State*, supra, where police officers seized business records, computers, and numerous files belonging to individuals not named in the warrant. *Grant v. State*, 220 Ga. App. at 609. In *Grant v. State*, supra, this Court could not determine from the record which items were legally seized under the warrant; we remanded the case to the trial court to make such determination, as it appeared that some of the evidence was properly seized under the warrant. Id. Further, in recognizing the problems with a generalized search of records, this Court specifically noted that "there are grave dangers inherent in executing a warrant authorizing a search and seizure of a person's *papers* that are not necessarily present in executing a warrant to search for physical *objects* whose relevance is more easily ascertainable." (Citation and punctuation omitted; emphasis supplied.) Id. at 608 (2).

In the case sub judice, no personal papers were sought or seized, and no one else lived in appellant's home, the site of the search. Appellant admitted that the seized photographs belonged to him, and the victim testified that the belt and panties found in the bedroom were hers. "The items seized from the home were obviously relevant to the crime and were properly seized as evidence. The warrants were issued by a neutral and detached magistrate and were supported by probable cause. There was no error in the denial of the motion to suppress." (Citation omitted.) *Ward v. State*, 262 Ga. at 297-298 (7); see also Division 6, infra.

4. In the fourth enumeration of error, appellant asserts that his constitutional right to confront witnesses against him was violated when the trial court allowed the introduction of a sworn hearsay statement which allegedly lacked necessity and reliability. We disagree for several reasons.

The evidence at issue in this enumeration involves an aggravated sexual assault committed by appellant in 1988; appellant pled guilty to the charge and was sentenced to five years probation. The State sought to compel the victim, who now resides in South Carolina, to testify in the case sub judice as a material witness to a similar transaction committed by the appellant. When the victim refused to testify in Georgia, the Georgia trial court issued a certificate of materiality of an out-of-state witness under the Uniform Foreign Deposition Act on August 23, 1995; such certificate was filed with the

Catoosa County Superior Court on the same day. A hearing was held on September 28, 1995, before a Circuit Court Judge in Pickens, South Carolina to determine whether the victim could be compelled to testify. See OCGA § 24-10-92 (a). At this hearing, the South Carolina Circuit Court heard testimony from the victim, who responded under oath to questions from her own attorney; the prosecutor in the case sub judice was also present but did not question the victim. The South Carolina Circuit Court also considered a report from a psychologist who examined the victim and who determined that the victim would be "very likely to suffer serious consequences if she was compelled" to testify in the Georgia case. The South Carolina Circuit Court found that compelling the victim would not be in her "best interest" and refused to require her to testify in Georgia. The Georgia trial court subsequently found that the victim was "unavailable," and admitted, over appellant's objection, portions of the transcript of the hearing as evidence of a similar transaction. The trial court specifically noted that appellant could submit the psychologist's report at trial to rebut the transcript, but appellant chose not to do so.

At trial, the State read into evidence the prior victim's testimony. The State also presented the testimony of a witness who arrived shortly after the assault, confronted appellant in the victim's apartment, and was told by the victim that appellant had just raped her.

(a) *Waiver of Appellant's Right to Confront a Witness.* With regard to appellant's assertion that he was denied his right to confront this witness, we note that this Court, in *Moore v. State,* 207 Ga. App. at 417, held that when victims of crimes for which appellant had pled guilty were unavailable, it was not error to admit police officers' testimony regarding the victims' prior statements to the officers. "By pleading guilty to these crimes, appellant waived his earlier opportunity to cross-examine the victim when they made the complaints against him." Id. at 417 (2). Appellant, in admitting to the commission of the rape of the witness as described in the indictment, waived his right to challenge the witness' statements regarding the incident. Therefore, the admission of the evidence did not violate appellant's right under the Confrontation Clause of the Sixth Amendment of the United States Constitution, and there was no error in admitting the statements under the necessity exception of OCGA § 24-3-1 (b). Id.

Further, appellant received notice of the State's efforts to compel the witness to testify, when the trial court's certificate of materiality of the witness was filed on August 23, 1995. It seems clear that appellant had the opportunity to attend the South Carolina hearing if he had, in fact, followed up on the State's motion to compel. As such, he has waived the right to complain that he was not specifically notified of the hearing.

(b) *Necessity Exception to Hearsay Evidence.* It is incumbent at this point to stress that the transcript evidence was not, as appellant asserts, hearsay. Hearsay is defined as evidence "which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons." OCGA § 24-3-1 (a). In the case sub judice, the testimony of the witness was given under oath in a proceeding which was ancillary to the case for which appellant was being tried, i.e., a hearing on the State's motion to compel the witness to testify. The weight of the testimony was dependent solely on the veracity of the witness, not a third party, as a court transcript transmitted the witness' statements to the jury. However, since the trial court specifically admitted the transcript under a "necessity exception" to the hearsay rules, we will address appellant's contention that the trial court erred in its hearsay analysis.

"OCGA § 24-3-1 (b) . . . provides that 'hearsay evidence is admissible in specified cases from necessity.' There are two prerequisites for admission of hearsay because of necessity: '1) necessity; [and] 2) particularized guarantees of trustworthiness.' *Idaho v. Wright,* [497] U. S. [805] (110 SC 3139, 111 LE2d 638) (1990); *Higgs v. State,* 256 Ga. 606 (351 SE2d 448) (1987)." *Mallory v. State,* 261 Ga. 625, 627 (2) (409 SE2d 839) (1991); see also *Wallace v. State,* 216 Ga. App. 718, 719 (455 SE2d 615) (1995); *Moore v. State,* 207 Ga. App. at 417. "[T]he prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." (Citation and punctuation omitted.) *Patterson v. State,* 202 Ga. App. 440, 443 (4) (414 SE2d 895) (1992); *Adams v. State,* 191 Ga. App. 16, 17 (381 SE2d 69) (1989). "The necessity exception usually applies 'in cases where the witness may not be compelled to testify. . . .' [Cit.]" *Patterson v. State,* 202 Ga. App. at 443 (4); see also *Luallen v. State,* 266 Ga. 174, 178 (465 SE2d 672) (1996); *Roper v. State,* 263 Ga. 201, 202 (2) (429 SE2d 668) (1993); *McKissick v. State,* 263 Ga. 188, 189 (3) (429 SE2d 655) (1993); *Swain v. C & S Bank of Albany,* 258 Ga. 547, 549-550 (372 SE2d 423) (1988); *Jackson v. State,* 202 Ga. App. 582, 586 (2) (414 SE2d 905) (1992); *Patterson v. State,* 202 Ga. App. at 443-444.

In the case sub judice, the South Carolina Circuit Court decided that the witness should not be compelled to testify in Georgia, concluding that to do so would "unduly jeopardize" her mental health. The Georgia court had already determined that the witness was a "necessary and material witness" to appellant's prosecution. Therefore, the witness was unavailable for the purposes of OCGA § 24-3-1 (b).

"The second aspect operates once a witness is shown to be unavailable. Only hearsay marked with such trustworthiness that there is no material departure from the reason of the general rule

may be admitted." (Citation and punctuation omitted.) *Adams v. State*, 191 Ga. App. at 17 (2). Such guarantees of trustworthiness act as a "substitute for the oath of the declarant and his cross examination by the party against whom the hearsay is offered." (Citation and punctuation omitted.) *Wallace v. State*, 216 Ga. App. at 719 (2). For example, the party offering the hearsay evidence may establish that the declarant consulted an attorney before giving the statement; the declarant never recanted or retracted the statement; and the statement was corroborated by other evidence. *Mallory v. State*, 261 Ga. at 627-628; *Wallace v. State*, 216 Ga. App. at 719-720; *Patterson v. State*, 202 Ga. App. at 444.

All of these indicia are present in the case sub judice. The victim gave a sworn statement under oath; was questioned by her personal attorney during the hearing in front of the South Carolina Circuit Court judge; the hearing was transcribed; the victim never recanted her testimony; and the testimony was corroborated by testimony from another witness. Further, while appellant complains that the psychologist's report indicates that the witness' testimony could have been unreliable, appellant was given the opportunity to introduce the report in rebuttal to the admission of the transcript testimony. However, appellant refused to do so, which was understandable since the report was, in many ways, unfavorable to his position, in that it underscored the "severe emotional trauma" inflicted on the witness by appellant.

"We have held that it is implicit in the trial court's admission of statements pursuant to OCGA § 24-3-16 that the trial court made the necessary finding of sufficient indicia of reliability. [Cits.]" (Punctuation omitted.) *Green v. State*, 212 Ga. App. 250, 251 (1) (441 SE2d 689) (1994). Therefore, there was no error in the trial court's admission of the transcript under the necessity exception of OCGA § 24-3-1 (b).

5. Appellant asserts that the trial court erred in failing to charge the jury on the limited purpose of the similar transaction evidence. However, the trial court specifically instructed the jury that such evidence was "admitted *solely* for the jury to consider only as it might tend to illustrate the defendant's *state of mind* on the subject involved, if you think it does so illustrate it, and for that purpose alone, . . . [and] if you believe that the accused has had similar transactions, you will bear in mind that in connection with any such evidence you are considering it *solely* with reference to the mental state, identity or intent of the defendant. . . ." (Emphasis supplied.) Appellant apparently takes issue with the reference to "identity" in the instructions, since the identity of appellant was never an issue regarding either the crime for which he was being tried or the similar transactions. However, for the same reason, such reference was

harmless. See *Miller v. State*, 219 Ga. App. 284 (464 SE2d 860) (1995); *Mapp v. State*, 191 Ga. App. 622 (382 SE2d 618) (1989). Further, appellant never requested limiting instructions, as required in *Miller v. State*, 219 Ga. App. at 286. See also *Moore v. State*, 202 Ga. App. 476, 480 (414 SE2d 705) (1992). This enumeration is without merit.

6. In his final enumeration, appellant asserts that the trial court erred in allowing the introduction of photographs of nude and semi-nude women, allegedly to demonstrate appellant's bad character. The photographs at issue were discovered during the search of appellant's home, while police officers were looking for a glass belonging to the victim.

"With regard to allegations of illegal sexual conduct, this court has repeatedly held that possession of [sexually explicit photographs] is relevant to show 'state of mind and lustful disposition.' *Stamey v. State*, 194 Ga. App. 305, 307 (2) (390 SE2d 409) (1990)." *King v. State*, 209 Ga. App. 529, 530 (2) (b) (433 SE2d 722) (1993). "The true issue is whether the evidence sought to be excluded by the defendant is admissible to show defendant's bent of mind toward the sexual activity with which he was charged or defendant's lustful disposition. [Cits.]" (Emphasis omitted.) *Helton v. State*, 206 Ga. App. 215, 216-217 (424 SE2d 806) (1992); see also *King v. State*, 209 Ga. App. at 530; *Stamey v. State*, 194 Ga. App. at 307. "[I]t would be illogical to say that such sexually depictive and explicit material has no relevance to the lustful disposition of the defendant or that they say nothing about his state of mind, as to inclination towards and preoccupation with such matters. If there is any question about it, it is a well established rule of law that the rules of evidence require that the evidence be admitted and its weight and effect left to the jury. *Stamey v. State*, 194 Ga. App. at 308." (Punctuation omitted.) *Helton v. State*, 206 Ga. App. at 217; see also *King v. State*, 209 Ga. App. at 531.

This case is distinguishable from *Roose v. State*, 182 Ga. App. 748 (356 SE2d 675) (1987), in which this Court found harmless error when photographs of a male defendant kissing another man were admitted in defendant's trial for performing oral sodomy on a twelve-year-old boy, as the two incidents were dissimilar in nature, the photograph did not depict a crime, and there was no logical connection between the first incident and the charged offense. In the case sub judice, all of the photographs were found in the room where the rape took place within hours of the rape. Several different nude women were shown in the photographs. Notably, two pictures showed two different women engaging in oral sodomy with an unidentified man, and the angle of the photographs strongly suggests that they were taken by appellant, who admitted ownership of the pictures. This is

significant because appellant is charged with aggravated (anal) sodomy and he testified that, prior to this trial, he did not know what "sodomy" meant.

There was no abuse of discretion in the trial court's admission of the photographs into evidence.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 6, 1997 — 

*Roland L. Enloe, Jr., Christopher A. Townley*, for appellant.

*Herbert E. Franklin, Jr., District Attorney, Christopher A. Arnt, Assistant District Attorney*, for appellee.