## A99A0259. GOODROE v. THE STATE.
### (518 SE2d 139)

Smith, Judge.

Willie Gene Goodroe was found guilty by a jury of three counts of rape and one count of aggravated assault.[1] His motion for new trial, as amended, was denied, and he appeals. We find no error, and we affirm.

1. Goodroe raises the general grounds. Construed to support the verdict, the evidence presented at trial showed that the victim was a middle-aged neighbor of the mother of Goodroe's girlfriend. She knew Goodroe because she had a car and had driven Goodroe's girlfriend, and sometimes Goodroe, on various errands. On the day in question, Goodroe knocked at the victim's door in the early morning hours and told her that his girlfriend was on her way over so that the victim could drive her home. He came in, sat down, and chatted until the victim realized that the girlfriend was not coming, whereupon she asked Goodroe to leave. Goodroe turned to leave, but as he approached the door he turned and grabbed the victim's arms. He shoved her into the bedroom and pushed her onto the bed, scraping her leg and breaking her glasses. He then terrorized and raped her repeatedly throughout the early morning hours, choking her and threatening to kill her.

The victim is five feet three inches tall and weighed only ninety-eight pounds at the time of the incident. Although there was an emergency pull cord over her bed, she testified that she was afraid to reach up and pull it. She had a lung condition that prevented her from screaming, and she concentrated on being "nice" in an effort to stay alive. She testified that she "figured the only way I was going to come out of this alive was to talk my way out of it or bluff him." She talked him into eating some breakfast, which she cooked. He was drinking coffee when he asked the victim to drive him to his sister's home. She agreed, and Goodroe took the coffee with him. The victim dropped Goodroe off at his sister's home and drove to a friend's home, hysterical. The victim told her friend that a black man had been in her apartment all night, and the friend called the police. Officer David Robinson of the Butler Police Department responded.

Robinson testified that earlier that morning he responded to a complaint from another tenant living at the same apartment complex as the victim. The other tenant told him that she would not let Goodroe into her apartment and he was bothering her and threatening to kill her. When Robinson responded to the victim's call, she told

---

[1] A previous conviction for these offenses was reversed on appeal because Goodroe was not present in court during a portion of the jury selection. *Goodroe v. State*, 224 Ga. App. 378 (480 SE2d 378) (1997).

him only that a black man had been trying to get into her apartment. Robinson took the information and left. After Robinson left, the victim began talking more to her friend, and when she told her friend that she had been raped, the friend called Robinson and asked him to return. He did so, returning with Police Chief Stewart O'Hearn. The victim told the police officers that Goodroe had raped her and that she had driven him to his sister's house.

The victim was taken to the hospital by ambulance. A doctor testified that the victim's panties were bloodstained but he did not observe any trauma to the vaginal area. He noted that the victim was "upset." A nurse testified to an abrasion on the victim's face.

The officers drove to the home of Goodroe's sister, found Goodroe, and took him into custody. The victim's coffee cup was found at Goodroe's sister's home. In his first interview, Goodroe denied seeing the victim, being in her apartment that night, or riding in her car. After locating the victim's coffee cup, a second interview was conducted with Goodroe. In that interview, he admitted that he stopped at the victim's apartment and chatted with her; he claimed that he then flirted with her and offered her $20 for sex, which she accepted. After having sex with her, he concluded "the sex was not worth twenty dollars" and refused to pay. He stated that the victim agreed with him that "she got just as much out of it as he did," and she drove him to his sister's house.

The trial court allowed the introduction of evidence of a similar transaction that occurred in 1983. The victim in that incident, a woman who weighed approximately one hundred pounds, testified that she met Goodroe at a club one evening, he asked her to dance, and she declined. The next day, she was in a friend's yard when Goodroe came up and lured her into nearby woods, saying her boyfriend was there. Goodroe had a shotgun, and he came up behind her, placed the shotgun at her back, and hit her with his fists when she resisted. He pulled her to an abandoned house, locked the doors, and raped her repeatedly, knocking her out each time she came to consciousness and threatening her life.

Goodroe argues, without citation to authority, that from the evidence presented, "no rational trier of fact could have found him guilty beyond a reasonable doubt." Contrary to his unsupported argument, however, this court cannot weigh the evidence or determine the credibility of witnesses. We determine only the sufficiency of the evidence, and the evidence presented in this case, including the testimony of the victim, the physical evidence, and Goodroe's changing statements, was more than sufficient to authorize a jury to find Goodroe guilty of the crimes charged under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Goodroe maintains the trial court erred in admitting the simi-

lar transaction evidence. He asserts that it was too remote in time, that it was not admitted for a permissible purpose, that it was not sufficiently similar to the charged crime, and that no "proof" existed that the similar transaction actually took place. We do not agree with any of Goodroe's assertions.

(a) In this case, the similar transaction took place approximately ten years and five months prior to the charged crime. But similar transactions more remote in time have been allowed. See, e.g., *Mullins v. State*, 269 Ga. 157, 158 (2) (496 SE2d 252) (1998) (17 years); *Howard v. State*, 228 Ga. App. 775, 776 (492 SE2d 683) (1997) (12 years); *Moore v. State*, 207 Ga. App. 412, 415-416 (1) (b) (427 SE2d 779) (1993) (22 years). In each of these cases, the defendant was incarcerated during some of the elapsed time between the similar transactions and the charged crime. We held that the evidence was admissible, and the time lapse affected only its weight and credibility. Id. Here, too, Goodroe spent time in prison between the two rape incidents.

(b) The State offered the similar transaction evidence to show Goodroe's lustful disposition and bent of mind, among other purposes. It is well settled, particularly in cases involving sexual offenses, that similar transactions may be admitted for these purposes. See, e.g., *Culver v. State*, 230 Ga. App. 224, 229 (3) (496 SE2d 292) (1998) (lustful disposition); *Brooks v. State*, 230 Ga. App. 846, 847 (498 SE2d 139) (1998) (bent of mind).

> Particularly in the area of sexual offenses, the admissibility of similar transaction evidence is liberally construed. Evidence of an earlier assault on a woman is material to the issue of consent or the lack thereof, and has a direct bearing on appellant's bent of mind. Such evidence would tend to rebut appellant's claim of consent by establishing that appellant has a propensity to initiate or continue an encounter without a woman's consent. . . . Such evidence also corroborates the victim's testimony that appellant acted in the manner charged.

(Citations and punctuation omitted.) *McBee v. State*, 228 Ga. App. 16, 19 (1) (491 SE2d 97) (1997).

(c) Contrary to Goodroe's argument, the offenses were similar in many respects. Both victims knew Goodroe; in both instances, Goodroe gained initial access to the victim using false information about the whereabouts of a third person; both victims were very small women; and each victim was raped repeatedly over the course of several hours. To be admissible, a similar transaction need not be identical. The crucial factor is its relevance to the issues at trial. *Woods v.*

*State*, 224 Ga. App. 52, 55 (3) (479 SE2d 414) (1996). The similarities in this case were relevant to the issue of consent, and they demonstrated similar use of both deception and violence in connection with the rapes.

(d) Ample "proof" of the similar transaction was presented. No corroboration of the victim's testimony is required. See, e.g., *Melvin v. State*, 203 Ga. App. 108, 109 (3) (416 SE2d 149) (1992). And a similar transaction is admissible notwithstanding the lack of an indictment; under certain circumstances, similar transactions may be admissible even when a prior charge resulted in an acquittal. *Johnson v. State*, 193 Ga. App. 618, 620 (388 SE2d 866) (1989). The trial court did not err in admitting the similar transaction evidence.

3. Goodroe concedes that his contention that the trial court should have given a cautionary instruction at the time the similar transaction evidence was introduced has been decided adversely to him, given that he failed to request such an instruction. *State v. Belt*, 269 Ga. 763 (505 SE2d 1) (1998).

*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED MAY 12, 1999.

*David J. Grindle*, for appellant.

*J. Gray Conger, District Attorney, Mark C. Post, Assistant District Attorney*, for appellee.