## A97A1563. HOWARD v. THE STATE.

(492 SE2d 683)

JOHNSON, Judge.

Elijah Howard was charged with kidnapping, burglary and criminal attempt to commit kidnapping for offenses involving Deborah Pitts. In a separate indictment, he was charged with committing aggravated assault and false imprisonment upon Queronar Hamilton. He was tried on both indictments in a single trial, without objection. A jury found Howard guilty of kidnapping and criminal trespass on the Pitts indictment, and guilty of aggravated assault on the Hamilton indictment. Howard appeals from the convictions entered on the verdicts and the denial of his motion for new trial.

Viewed in the light most favorable to the verdicts, the evidence shows the following facts involving Deborah Pitts: In June 1994, Pitts ended a three-year relationship with Howard and moved into her mother's home. A few days later, when Pitts refused to let Howard come into the home, he broke a back window and climbed inside Pitts' mother's house. Pitts ran out the front door, but was captured by Howard. Pitts' ten- and twelve-year-old children were in the house at the time. Howard grabbed Pitts and shoved her into his car, then held a butcher knife to her throat and threatened to kill her. After driving Pitts to his cousin's house and to a hotel, he drove her back to her neighborhood and released her.

Facts relating to the offenses involving Queronar Hamilton are as follows: In October 1994, Howard was trying to persuade Hamilton, his girl friend, to dismiss criminal trespass and assault warrants she had sworn out against him earlier. Howard argued with Hamilton, then choked, repeatedly punched, and pushed her into a mirror, cutting her. He dragged her down the hallway, out of her house and into the yard. Hamilton's three-year-old son, her sister's boyfriend and a neighbor witnessed the events.

1. Howard claims the trial court erred in allowing the state to introduce evidence of two similar transactions because the prior offenses were too remote in time and were not sufficiently similar to the offenses charged. We disagree.

Howard refers to evidence admitted regarding the following incidents: In 1982, after Howard poured a can of beer into the hair of his girl friend, Shirley Banks, Banks and a female friend started walking to the store to purchase hair care products. Howard told Banks "she wasn't going no damn where," but she and the friend left anyway. Howard caught up with them on the street, told Banks he was going to kill her, then beat her in the head with his fists and the butt of a

gun and kicked her as she lay on the ground.[1] The other incident occurred in 1991. In it, Howard's girl friend, Jemisa Fambro, asked him if he was seeing Pitts. In response, Howard beat Fambro in the face, threw her on the floor, punched her, dragged her by the hair, and tried to suffocate her with a pillow. He returned later and hit and kicked Fambro, then forced her to have sexual intercourse with him. Fambro's four-year-old son witnessed the attacks. The state sought to admit the evidence to show Howard's intent and course of conduct.[2]

The transactions were sufficiently similar to the crimes charged. As with the charged offenses, both of the challenged prior incidents involved an assault and battery committed by Howard upon a girl friend, while other people were present. In both the 1982 assault and the charged offense involving Pitts, the girl friend was captured outside as she tried to leave the house. The 1991 Fambro incident and the charged Hamilton incident both involved the girl friend being hit and dragged. In both the 1991 case and the charged offense involving Pitts, the victims alleged that Howard forced them to have sexual intercourse during the ordeal. The superficial dissimilarities cited by Howard, namely that one of the prior acts occurred on the street rather than inside a home, one involved hitting the victim with a gun while the charged offenses did not, and that one of the prior attacks did not include a sexual assault or kidnapping, do not destroy the basis for admitting this evidence of similar transactions. See *Moore v. State*, 207 Ga. App. 897, 898 (1) (429 SE2d 340) (1993).

The argument that the 1982 and 1991 transactions were too remote in time is similarly without merit. The 1991 assault occurred only three years prior to the charged offenses. See *Talley v. State*, 209 Ga. App. 79, 80 (2) (a) (432 SE2d 667) (1993). Furthermore, the 1982 assault was not too remote in time, particularly in light of the fact that Howard was incarcerated for several years between 1982 and 1991. See *Moore v. State*, 207 Ga. App. 412, 416 (1) (b) (427 SE2d 779) (1993). The evidence was probative of Howard's method of resolving disputes with his girl friends by committing violent acts upon them. The trial court did not abuse its discretion in admitting this evidence under the standard set forth in *Williams v. State*, 261 Ga. 640, 642

---

[1] Early the next morning, Howard shot Banks to death. He pled guilty to voluntary manslaughter and was sentenced to serve 17 years in prison. The trial court's reversal of its pre-trial decision not to allow the introduction of evidence regarding this crime is raised in a separate enumeration and is discussed in Division 2, below. Only the aggravated assault against Banks, rather than the manslaughter, is discussed in this division.

[2] Although Howard lists several other assaults which the court ruled admissible in the similar transactions hearing, he argues in this enumeration only that the admission of evidence of the 1982 aggravated assault on Banks and the 1991 assault on Fambro was erroneous. He specifically concedes that evidence of prior offenses committed against Pitts and Hamilton was properly admitted. See *Height v. State*, 214 Ga. App. 570, 573 (5) (448 SE2d 726) (1994).

(409 SE2d 649) (1991). See *Posey v. State*, 222 Ga. App. 405 (1) (474 SE2d 206) (1996) (physical precedent only).

2. In a separate enumeration, Howard contends the trial court erred in reversing its pre-trial ruling and permitting the state to introduce evidence regarding the 1982 fatal shooting of Shirley Banks, a crime to which Howard pled guilty to voluntary manslaughter. We find no error.

At trial, Howard testified on his own behalf and, when cross-examined about the 1982 aggravated assault on Banks, denied being the aggressor or having had a gun that day. The state renewed its motion to allow evidence of the fatal shooting as a similar transaction and also moved to admit the evidence to impeach Howard's testimony that he did not have a gun on the day he allegedly pistol-whipped Banks. The trial court ruled that evidence of the manslaughter was admissible because it was sufficiently similar to the charged offenses and because it impeached Howard's testimony. Howard argues that evidence regarding the homicide should not have been admitted as a similar transaction because the facts were different from the charged offenses and the past crime was too remote. Howard argues further that it was not admissible for impeachment purposes because evidence of the shooting did not contradict his trial testimony regarding the prior aggravated assault.

(a) *Similarity between the 1982 manslaughter and the charged offenses.* In both the manslaughter case and the Pitts case, Howard climbed through a window in his girl friend's residence and then injured or killed her. The differences cited by Howard are superficial rather than substantive. See *Moore*, 207 Ga. App. 897, supra. And, as shown above, the past crime was not too remote in time.

(b) *Impeachment of his trial testimony.* Howard argues that evidence that he had a gun when Banks was shot at 4:00 or 5:00 a.m. on October 8, 1982, did not impeach his testimony in the trial of the charged offenses that he did not have a gun on October 7, 1982. While the two offenses did not occur on the same day, they happened only approximately thirteen hours apart. Evidence that he had a gun in the early morning hours of October 8 may be probative to show the falsity of Howard's statement during the trial of these cases that he did not have a gun when he assaulted Banks on the afternoon of October 7. Therefore, he could be impeached with proof of the fact that he did have a gun within hours of the time Banks was pistol-whipped. See generally *Porter v. State*, 254 Ga. 388 (330 SE2d 94) (1985). Because the evidence was admissible for these reasons, we need not consider whether it was also admissible to impeach his testimony regarding whether he was the aggressor in the charged offenses.

3. Howard argues that the trial court erred in allowing the state

to present similar transaction evidence prior to presenting evidence of the charged offenses. However, Howard did not object at trial to the order in which the evidence was presented. Therefore, the issue has been waived. See generally *Hunter v. State*, 202 Ga. App. 195, 197-198 (3) (413 SE2d 526) (1991).

4. Howard contends that the prosecutor engaged in misconduct by misrepresenting to the court, in the state's renewed motion to introduce evidence of the Banks' shooting, the amount of time which lapsed between the beating of Banks and the fatal shooting. Howard argues the state *implied* that the two events occurred contemporaneously or within a very short time period when they actually transpired on different calendar days. Assuming, arguendo, that this enumeration was preserved below, it is without merit.

The state introduced evidence during the pre-trial similar transaction hearing showing that the beating and shooting occurred on two separate dates. It is clear from the record that the trial court was aware of the differing dates, as the judge specifically noted in the pre-trial hearing that one incident occurred on October 7 and the other took place on October 8, 1982. In addition, in arguing the renewed motion to admit evidence of the fatal shooting during the trial, the prosecutor stated that the shooting happened "hours later," not that it occurred contemporaneously with the aggravated assault. Finally, immediately after the court changed its earlier ruling, the prosecutor reminded the court that the two transactions did not occur on the same calendar day. Howard has failed to prove by the record that the prosecutor misrepresented the facts to the court. See *Moclaire v. State*, 215 Ga. App. 360, 364 (6) (451 SE2d 68) (1994).

5. Howard argues on appeal that his trial counsel rendered ineffective assistance. However, the record does not indicate that this assertion was made to the trial court. Howard was convicted in February 1995. New counsel was appointed to represent him in November 1995, eight months before a hearing on his motion for new trial was held. Howard's failure to raise the ineffectiveness claim before appeal when he had the opportunity to do so precludes him from raising the issue here. See *Glover v. State*, 266 Ga. 183 (2) (465 SE2d 659) (1996).

*Judgment affirmed. Pope, P. J., and Blackburn, J., concur.*

DECIDED SEPTEMBER 26, 1997 —
RECONSIDERATION DENIED OCTOBER 10, 1997 —

*Debra G. Gomez*, for appellant.

*Charles H. Weston, District Attorney, Laura D. Hogue, Assistant District Attorney*, for appellee.