## A98A1435. REYNOLDS v. THE STATE.
### (507 SE2d 814)

RUFFIN, Judge.

A jury found Robert Charles Reynolds guilty of one count of rape and not guilty on a second count of rape. Reynolds appeals, asserting that the trial court improperly denied his motions to sever the two rape charges. For reasons which follow, we affirm.

### *Victim 1*

The evidence at trial showed that on November 27, 1993, the first victim, who was 19 at the time, was at a shopping mall with Kelly Karim, her roommate, when Reynolds, a stranger to both women, approached them and started a conversation. He asked the victim if he could meet her later that evening, to which she answered "yes."

Later that evening, Karim took the victim to a cafe where Reynolds met them. The victim and Karim planned for Karim to stay and "make sure that everything was okay." After about 15 to 30 minutes of talking to Reynolds and one of his friends, Karim left when the victim told her "that everything seemed to be okay." About 15 minutes after Karim's departure, Reynolds and the victim left the cafe to go to a restaurant.

The victim testified that at the restaurant, where they stayed for about 45 minutes, Reynolds took her hands and pressed them "to see if I was like a weakness or a strongness. I am not quite sure how to explain it." There was no other physical contact at the restaurant. Upon Reynolds' suggestion, they left the restaurant to watch television at his parents' house, where he told the victim he lived. Neither Reynolds nor the victim had any alcoholic beverages at the cafe or the restaurant.

At the house, Reynolds and the victim went to his bedroom to watch television. The victim testified that they both sat on the edge of the bed, because there was no place else to sit. They watched television for a couple of minutes, at which time the victim started feeling uncomfortable about being in his bedroom.

When Reynolds started hugging and kissing the victim, she said "no." Reynolds then muted the television, turned the stereo up "pretty loud," and got up to close his bedroom door. He came back to the bed and started forcefully hugging and kissing the victim, who told him she was "not easy" and tried to push him away. Reynolds pushed the victim onto her back, sat on top of her legs, and pinned her arms with his hand, while she yelled "no" and "get the f--- off me" and tried to get away. As he held her down, Reynolds took off the victim's clothes as well as his own. He forcefully turned the victim over onto her stomach and entered her vagina with his penis, while he wrapped his legs around her legs and continued to hold her hands down as she cried and told him to get off. According to the victim, Reynolds told her he finally stopped because she was crying, and "[h]e thought I wanted it." He did not ejaculate.

Reynolds then took the victim home, telling her she was ungrateful and did not enjoy it. After he dropped her off, she told Karim she had been raped. They called the police, and Karim and the victim's brother took her to a hospital where a doctor examined her. The victim talked to the police at the hospital and gave them Reynolds' name and business card.

On the afternoon following the attack, Reynolds called the victim, and she taped the conversation. Reynolds said that he had been dating "crazy kinky girls" who liked that kind of sex and that "I know I hurt you." When she asked him, "What were you hearing while I was saying stop, please don't do that," Reynolds answered, "I don't know. . . . I heard you. I just didn't know. Oh, God." Reynolds responded "uh, huh" after the victim told him "[y]ou had me to a point that there was no way that I could move. . . . Absolutely no way." Reynolds said he "f---d up," that he was sorry, and that he wanted to "fix it."

At the time of the incident, the victim was four feet, eleven inches tall and weighed ninety-eight pounds, and she estimated that Reynolds was around five feet ten or eleven inches tall and about one hundred sixty-five pounds.

Reynolds testified that he and the victim were kissing, talking and laughing prior to having sex. He testified both he and the victim took off her clothes, and they kissed and caressed each other. He said he fondled her and she did not resist until he tried to have intercourse with her, at which time she made a noise of discomfort and he stopped immediately. At that point, he said the victim got angry and wanted to be taken home. On cross-examination, however, when asked "[W]as there sex without consent," Reynolds responded, "That's not for me to judge." When the prosecutor asked him, "And she changed her mind just like that (snaps fingers)," Reynolds answered, "It seems to happen that way sometimes for me."

## *Victim 2*

The second incident occurred on April 3, 1994, about four months after the first incident. The alleged victim of the second incident was Reynolds' roommate. She was twenty-five years old and weighed one hundred to one hundred five pounds at the time and had been friends with Reynolds for two years before becoming his housemate. They each had their own bedroom in the house, which was owned by Reynolds' parents, and the victim denied ever having had any sort of sexual contact or romantic relationship with him before the April 3, 1994 incident.

The victim testified that, on the evening of April 3, 1994, she and Reynolds were both at home, watching television and smoking marijuana. The victim was lying on her stomach on the couch with her face toward the television while Reynolds was in a recliner at the end of the couch. She testified that she never invited any sort of sexual contact with Reynolds that night. At some point during the evening, she fell asleep, only to be awakened by Reynolds, who jumped on her back, straddled her body by sitting on her legs, locked her arms down, and shook her face into the couch with his hands on her shoulders. The victim was unable to move. When she asked him to get off, he would not.

The victim testified that Reynolds grabbed her by the hair and her pajama top and pulled her into his bedroom, which was about six feet from the couch. He threw her onto his bed on her back, jumped on top of her, put his hand on her shoulders, yanked her pajama bottoms down, wedged one leg between her legs and pushed them apart and put his penis into her vagina against her will. All the while the victim told Reynolds to stop and get off. After a few minutes, Reynolds stopped and got up. He did not ejaculate. After a few minutes of being "dazed," the victim testified that she went into her own room.

The next day, Reynolds, at his insistence, took the victim to the airport for a trip she had previously planned to New York. She testified she said nothing during the ride, and that "[h]e said he was sorry if he hurt me." The victim did not call the police about the rape until four or five days after she returned from her trip.

In his sole enumeration of error, Reynolds contends the trial court erroneously denied his pre-trial and post-trial motions to sever the two rape charges. We disagree.

"An abuse of discretion standard applies when reviewing denial of a motion to sever the trial of separate offenses." *Agony v. State*, 226 Ga. App. 330 (1) (486 SE2d 625) (1997). "Offenses may be joined for trial when they are based (1) on the same conduct or (2) on a series of acts connected together or (3) on a series of acts constituting parts of a single scheme or plan. If offenses are joined for any of these three

reasons, the defendant does not have an automatic right of severance; instead, the trial judge may grant severance if it is necessary to achieve a fair determination of the defendant's guilt or innocence of each offense." (Citation and punctuation omitted.) *Carter v. State*, 192 Ga. App. 726, 727 (4) (386 SE2d 389) (1989).

Moreover, "[w]here the evidence of one crime would be admissible in the trial of the other crime, it cannot be said that the trial court abused its discretion in denying [the] motion for severance." (Punctuation omitted.) *Weaver v. State*, 206 Ga. App. 560, 561 (1) (426 SE2d 41) (1992). Moreover, "[t]he two transactions need not be identical in every respect. [Further,] the rules regarding the use of similar transaction evidence are construed most liberally in cases involving sexual offenses." (Citations omitted.) *Lumsden v. State*, 222 Ga. App. 635, 636 (1) (475 SE2d 681) (1996). "In [cases] involving sexual offenses, evidence of similar previous transactions is admissible to show the lustful disposition of the defendant and to corroborate the testimony of the victim as to the act charged." (Punctuation omitted.) *Franklin v. State*, 201 Ga. App. 147, 148 (1) (410 SE2d 451) (1991). "Evidence of an earlier assault on a woman is material to the issue of consent or the lack thereof, and has a direct bearing on appellant's bent of mind." (Punctuation omitted.) *McBee v. State*, 228 Ga. App. 16, 19 (1) (491 SE2d 97) (1997).

The trial court did not err in refusing to sever, since evidence of either incident would have been admissible in the trial of the other. The facts common to both incidents include remarkable similarities. Although the first victim had met Reynolds only the night of the attack, he spent enough time with her to gain her confidence before the rape. The second victim was his own roommate. Both incidents occurred in Reynolds' bedroom at his parents' house. According to the testimony of both women, Reynolds pinned them down by sitting on their legs during the assaults. In both instances, as described by the victims, Reynolds continued his assault after the victim told him to stop. Both women testified that Reynolds did not ejaculate. After both incidents, Reynolds apologized to the women and sought to be with them the following day.

Given the similarity of the incidents, evidence of the two attacks tends "to rebut appellant's claim of consent by establishing that appellant has a propensity to initiate or continue an encounter without a woman's consent and, in fact, against her explicit request to stop." *McBee*, supra. See *Sudlow v. State*, 140 Ga. App. 146, 147 (230 SE2d 106) (1976) (evidence of previous assault is justifiable rebuttal evidence where defendant admits the transaction but denies the coercive element). Here, both women testified that Reynolds continued to rape them after their repeated pleas for him to "stop" and "get off." Reynolds himself admitted "[i]t seems to happen that way some-

times for me" when the prosecutor asked him whether the first victim had simply changed her mind during intercourse.

The two separate incidents do not need to be identical in order for them to be joined at trial. *Lumsden,* supra. Rather, Reynolds' style of sudden and physical attack on small, unsuspecting women who were comfortable in his presence, in his own bedroom, is enough to convince us that the trial court did not abuse its discretion in denying Reynolds' motions to sever.

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED SEPTEMBER 30, 1998.

*Marcia G. Shein,* for appellant.

*J. Tom Morgan, District Attorney, Thomas S. Clegg, Barbara B. Conroy, Assistant District Attorneys,* for appellee.